**Weil, Gotshal & Manges LLP**

VIA ECF AND FACSIMILE

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Todd Larson**
+1 (212) 310-8238
todd.larson@weil.com

August 19, 2024

Hon. Naomi Reice Buchwald
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

Re: *SoundExchange, Inc. v. Sirius XM Radio Inc.*, No. 1:24-cv-5491 (S.D.N.Y.)
    Request for Pre-Motion Conference

Dear Judge Buchwald:

We represent Defendant Sirius XM Radio Inc. ("Sirius XM") in the above-captioned action and, pursuant to Your Honor's Individual Practice Rules, write to request a pre-motion conference in connection with Sirius XM's anticipated Motion for Judgment on the Pleadings under Rule 12(c). The motion would seek dismissal for failure to state a claim because Plaintiff SoundExchange, Inc. ("SoundExchange") has no private right of action under the federal statute it seeks to enforce.

SoundExchange has brought two claims under Section 114 of the U.S. Copyright Act, which provides a licensing mechanism enabling users like Sirius XM to obtain a "statutory license" for the distribution of sound recordings by way of a digital audio service such as satellite radio or internet streaming. SoundExchange's mandate is simple, clear and limited; it is the entity designated by the Copyright Royalty Board to collect royalties from statutory license users and to distribute those royalties to artists and copyright owners. Section 114 does *not* expressly authorize SoundExchange to sue statutory license holders like Sirius XM for alleged royalty underpayments. Because courts presumptively no longer "imply" a private right of action into federal statutes where Congress has not expressly provided one, *Alexander v. Sandoval*, 532 U.S. 275, 288–91 (2001), the case should be dismissed with prejudice.

I.  **Congress has not expressly authorized a private right of action for SoundExchange's claims.**

Only Congress, not the Judiciary, has the power to establish private rights of action. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004); *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 636–37 (2021). Congress did not do so in Section 114.

While the Copyright Act has been amended many times since its passage in 1909—including to expressly authorize private rights of action in many other provisions—Congress has never authorized a private right of action under Section 114. Section 114 describes the scope of

August 19, 2024  
Page 2

**Weil, Gotshal & Manges LLP**

copyrights granted to artists and to record companies that create sound recordings. Section 114 also establishes a mechanism for digital services like Sirius XM to license and pay for those copyrights through an intermediary "collective" (currently, SoundExchange) appointed by the Copyright Royalty Board. But Section 114 does not authorize the "collective" to sue to enforce the statute. With respect to SoundExchange's authority, Section 114 mentions only that it has the ability to deduct from the money it receives certain costs before distributing those monies to copyright owners. 17 U.S.C. § 114(g)(3).

Congress knows how to create private rights of action in the Copyright Act. Section 501, for example, expressly provides that a copyright owner is entitled "*to institute an action* for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b) (emphasis added). And Sections 502–505 expressly provide the remedies for an infringement action. *See id.* §§ 502(a), 503(a)(1), 504, 505. Similarly, 18 U.S.C. § 2318(e)(1) expressly provides that a copyright owner "may bring a civil action in an appropriate United States district court" for trafficking in counterfeit labels. By contrast, Congress did not authorize SoundExchange to sue under Section 114.

Likewise, nothing in the regulations promulgated by the Copyright Royalty Board purports to create such a private right of action. And even if it did, such a departure from the plain meaning of the statute would be void. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) (overruling *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).

**II.     No private right of action should be implied.**

Where, as here, a statute does not expressly provide for a private right of action, there is a "strong presumption that Congress did not intend a private right of action," and the plaintiff has a "heavy burden" to demonstrate otherwise. *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 433 (2d Cir. 2002). After all, Congress does not hide private rights of action in subsections of statutes detailing how administrative costs and expenses can be handled. *See Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 583 U.S. 416, 431 (2018) ("Congress does not hide elephants in mouseholes.").

Courts apply a two-step test to determine whether a private right of action can be implied. They look to whether: (1) the statute contains rights-creating language that focuses on the "individuals protected" rather than the "person regulated," and (2) Congress intended a private remedy. *Sandoval*, 532 U.S. at 289. Both must be true for a court to imply a private right of action. Here, neither is.

      **A.     *Section 114 does not grant SoundExchange enforceable rights.***

Section 114 does not contain "rights-creating" language focused on SoundExchange. Rights-creating language "explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff in [a] case," *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690 n.13 (1979), or identifies "the class for whose *especial* benefit the statute was enacted," *id.* at 688 n.9 (internal quotation marks omitted). Titled "Scope of exclusive rights in sound recordings," Section 114 is focused on specifying the metes and bounds of copyrights. Although it authorizes SoundExchange to act as

August 19, 2024  
Page 3

**Weil, Gotshal & Manges LLP**

an intermediary to receive license payments and to distribute them (after deducting its administrative expenses, *see* § 114(g)(3), (4)), Section 114 does *not* confer rights upon SoundExchange that may be enforced against license holders.

### B. *There is zero evidence of Congressional intent to create a private remedy.*

Nor can SoundExchange demonstrate Congressional intent for a private remedy. Congress has repeatedly demonstrated its willingness to create an express private right of action in the Copyright Act, and the fact that it has not done so here—especially given the two decades since *Sandoval*—is the best evidence that it did not intend to. The Second Circuit has stressed that "to recognize implied rights of action, . . . the text and structure of a statute [must] yield a clear manifestation of congressional intent" to create one. *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011). Section 114 contains no evidence of any such congressional intent.

The text of Section 114 and its implementing regulations makes clear that SoundExchange is a statutorily-authorized "common agent" to receive and distribute statutory royalties on behalf of copyright owners. In this role, SoundExchange has the power to deduct its costs from distributions to royalty holders. *See* § 114(g)(3). SoundExchange also has mechanisms to address instances of unauthorized use or non-payment, including initiating audits pursuant to the statute's implementing regulations, *see* 37 C.F.R. §§ 380.6(a), 382.7(a), and negotiating settlements related to those audit findings. None of this demonstrates Congressional intent for SoundExchange to bring a federal lawsuit in its own name as if it were a copyright holder.

The structure of the Copyright Act confirms this conclusion. Had Congress intended to provide SoundExchange with a private right of action, it would have spoken clearly, as it has in many other provisions of the Act. *See Olmsted*, 283 F.3d at 433 ("Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional."). Nothing in the statute even hints at a Congressional intent to allow SoundExchange to sue as if it were the owner of the copyrights.

Nor are extra-textual policy reasons sufficient to recognize an implied right. In every implied right of action case, the plaintiff says that pro-enforcement policy reasons justify implying a private right. Such policy reasons are not relevant and, in any event, have little force here. A large majority of the sound recordings used by Sirius XM are owned by large record companies who are well versed in protecting their rights under the Copyright Act.

\*   \*   \*

Sirius XM respectfully requests that the Court schedule a pre-motion conference to discuss Sirius XM's anticipated motion and to set a briefing schedule.[1]

---

[1] Sirius XM recognizes that pleadings will not be formally closed until SoundExchange responds to Sirius XM's counterclaims on September 3, 2024. This request for a pre-motion conference seeks permission to file a motion after that date.

August 19, 2024                                                                                                             **Weil, Gotshal & Manges LLP**
Page 4

| | |
|---|---|
| Dated: August 19, 2024 | Respectfully submitted, |
| | By:   /s/ Todd Larson |
| | Todd Larson<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Telephone: (212) 310-8238<br>Facsimile: (212) 310-8007<br>Todd.Larson@weil.com |
| | Andrew S. Tulumello (admitted *pro hac vice*)<br>Crystal L. Weeks (admitted *pro hac vice*)<br>WEIL, GOTSHAL & MANGES LLP<br>2001 M Street NW, Suite 600<br>Washington, DC 20036<br>Telephone: (202) 682-7100<br>Facsimile: (202) 857-0940<br>Drew.Tulumello@weil.com<br>Crystal.Weeks@weil.com |
| | *Counsel for Defendant Sirius XM Radio Inc.* |