

Scott A. Zebrak
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.3758
scott@oandzlaw.com

August 22, 2024

**VIA ECF AND FAX**

Hon. Naomi Reice Buchwald
Daniel Patrick Moynihan United States Courthouse
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:** *SoundExchange, Inc. v. Sirius XM Radio Inc.*, No. 1:24-cv-05491 (S.D.N.Y)

Dear Judge Buchwald:

    We write on behalf of SoundExchange, Inc. to respond to Sirius XM Radio Inc.'s letter requesting a pre-motion conference, Dkt. 48. As described below, Sirius's proposed motion for judgment on the pleadings under Rule 12(c) is both premature and meritless. A party may not file a Rule 12(c) motion until the pleadings are closed. Here, the pleadings will not be closed until after the Court rules on SoundExchange's forthcoming motion to dismiss Sirius's counterclaims. Thus, a pre-motion conference is premature. As to the merits of the proposed motion, Sirius asks this Court to interpret the Copyright Act to thwart the basic purpose of the provision at issue. Congress did not intend that SoundExchange be the sole collector of royalties under an industry-wide statutory license, but lack the ability to sue for royalties owed.

## BACKGROUND

    The Copyright Act creates a statutory license for services like Sirius to transmit digitally all copyrighted sound recordings without needing to negotiate countless individual license agreements in the marketplace. 17 U.S.C. § 114(d)(2). In exchange for this blanket license, Sirius must pay royalties to artists and copyright owners at a rate set by the Copyright Royalty Board ("CRB"). *Id.* § 114(f)(1). The Act requires Sirius to pay these royalties to a "collective" (SoundExchange), which then distributes the royalties to artists and copyright owners. SoundExchange is the only such collective authorized to collect and distribute these royalty payments. 17 U.S.C. § 114(d); 37 C.F.R. § 382.3(a). The Act requires SoundExchange to distribute 50% of the royalties to the sound recording's copyright owner, 45% to the featured recording artist, and 5% to a fund that benefits nonfeatured musicians and vocalists. 17 U.S.C. § 114(g)(2).

    This case addresses two instances in which Sirius has underpaid the royalties it owes to artists and copyright owners. First, for years, Sirius has been overstating one of the deductions it makes to its royalty obligation, resulting in a massive underpayment. Compl. ¶¶ 8, 30–56, Dkt. 1. Second, an independent auditor determined that, for the 2018 calendar year, Sirius underpaid

Hon. Naomi Rice Buchwald
August 22, 2024
Page 2

royalties. Compl. ¶¶ 57–62. The relevant regulation requires Sirius to pay SoundExchange what the auditor determined Sirius owes, 37 C.F.R. § 380.6(g), but Sirius has refused to do so.[1]

## ARGUMENT

### I. Sirius's request for a conference is premature because the motion Sirius proposes is not ripe.

A party may not file a 12(c) motion until "[a]fter the pleadings are closed . . . ." FED. R. CIV. P. 12(c). Where a suit includes counterclaims, the pleadings are closed only when the counterclaim defendant *answers* the counterclaims. *Kraus USA, Inc. v. Magarik*, No. 17-cv-6541, 2018 WL 4682016, at *12 (S.D.N.Y. Sept. 28, 2018) ("[W]here a complaint, answer, and counterclaims have been (or soon will be) filed, the pleadings will be closed when the counterclaim-defendants file answers to the counterclaims."). Where the counterclaim defendant has only moved to dismiss the counterclaims, rather than answered them, the pleadings are not closed, and a 12(c) motion cannot be filed. *Id.* ("Because [the counterclaim defendant] has not yet filed answers to [the counterclaim plaintiff's] counterclaims—rather, [the counterclaim defendant] chose to move to dismiss or oppose them—the pleadings are not yet closed. Thus, Defendants' motion for judgment on the pleadings is premature."); *Niederland v. Chase*, No. 11 CIV. 6538, 2012 WL 2402603, at *4–5 (S.D.N.Y. June 26, 2012) (Rule 12(c) motion premature where the counterclaim defendant had moved to dismiss the counterclaims, but had not answered them). SoundExchange has not yet answered Sirius's counterclaims and intends to move to dismiss them. Accordingly, a pre-motion conference is premature.

### II. The Copyright Act empowers SoundExchange to sue to recover underpaid royalties from Sirius.

As to the merits of Sirius's proposed motion, the text and structure of the Copyright Act demonstrate that Congress intended for SoundExchange to have the right to sue to recover underpaid royalties. An implied cause of action exists where a statute "displays an intent" to create "a private right" and "a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Applying *Sandoval*, courts have implied causes of action in a variety of statutes, including the Copyright Act. *See, e.g.*, *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1122 (9th Cir. 2015) (finding an implied cause of action in the termination provision of the Copyright Act, 17 U.S.C. §§ 203, 304(c)).

For royalty payments owed to artists and copyright owners under the statutory license, the Act provides for a collective right and displays an intent to provide a collective remedy through SoundExchange. The Act deals with the royalties at issue here on a collective basis. It allows Sirius

---

[1] In response to SoundExchange's demand that Sirius pay the amount the independent auditor determined Sirius owed, last week Sirius filed a separate lawsuit in state court against the accounting firm and the individual partner who conducted the audit. *Sirius XM Radio Inc. v. Adeptus Partners*, No. 654079/2024 (N.Y. Sup. Ct.), Dkt. 1.

Hon. Naomi Rice Buchwald
August 22, 2024
Page 3

to transmit digitally the copyrighted sound recording of *any* artist or copyright owner. 17 U.S.C. § 114(f)(3)(B). It then provides that *all* artists and copyright owners will be paid the same royalty rate, *Id.* § 114(f)(1)(B), and specifies how these royalties are to be divided amongst artists and rightsholders. *Id.* § 114(g)(2). Within that system of collective rights and remedies, the Act provides that the rights of all artists and copyright owners will be represented by a "collective," SoundExchange: the Act provides that royalties will be paid to and distributed by SoundExchange, *Id.* §§ 114 (g)(2), and that SoundExchange will engage in "the settlement of disputes relating to the collection and calculation of the royalties . . . ." *Id.* §§ 114(g)(2), (g)(3)(B).

In this statutory license context, therefore, the Act manifests an intent to grant SoundExchange rights and remedies to act on behalf of artists and copyright owners collectively. These rights and remedies necessarily include the right to sue a statutory licensee for underpayment of royalties. Without the right to bring such suits, SoundExchange's right to collect royalties would be unenforceable and the entire statutory licensing scheme Congress created would collapse.

Sirius argues that artists and copyright owners must each bring suit individually to recover any underpayment, rather than acting together through SoundExchange. Dkt. 48. This would create profound inefficiency and inequality, requiring separate claims from hundreds of thousands of artists and copyright owners, each alleging the same underpayment.[2] More fundamentally, Sirius's interpretation conflicts with the Copyright Act's entire scheme for the statutory license. Congress surely did not intend for collective licensing, collective rate determination, and collective collection and distribution of royalties, but then for mass individualized actions in the event of underpayment. Indeed, SoundExchange previously has sued Sirius for underpayment of royalties, and Sirius did not argue that there was no implied cause of action for SoundExchange. *SoundExchange, Inc. v. Sirius XM Radio Inc.*, 13-cv-1290 (D.D.C.). Sirius's proposed motion thus offers an illogical reading of the Copyright Act.[3]

## CONCLUSION

Sirius's proposed motion is a transparent attempt to avoid paying what it owes. This Court should deny Sirius's request to file a Rule 12(c) motion as premature. And, when the time comes, the Court should hold that the Copyright Act provides an implied cause of action for SoundExchange to enforce Sirius's royalty obligations.

---

[2] To be clear, the CRB does not have enforcement authority either to order Sirius to pay deficiencies found after an audit, or to adjudicate disputes over whether there has been an underpayment. *Determination of Royalty Rates (SDARS III)*, 83 Fed. Reg. 65210, 65263 (Dec. 19, 2018); *Determination of Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio Services*, 82 Fed. Reg. 56725, 56727 (Nov. 30, 2017).

[3] Should Sirius be allowed to file its motion, SoundExchange, of course, reserves the right to make additional arguments in opposition.

Hon. Naomi Rice Buchwald
August 22, 2024
Page 4

                                          Respectfully Submitted,

                                          /s/ *Scott A. Zebrak*
                                          Scott A. Zebrak
                                          Corey Miller
                                          Jeff Kane (pro hac vice)
                                          OPPENHEIM + ZEBRAK, LLP
                                          4530 Wisconsin Avenue NW, Fifth Floor
                                          Washington, DC 20016
                                          Tel: 202-480-2999
                                          scott@oandzlaw.com
                                          corey@oandzlaw.com
                                          jkane@oandzlaw.com