**Weil, Gotshal & Manges LLP**

BY ECF

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Todd Larson**
+1 (212) 310-8238
todd.larson@weil.com

October 28, 2024

Hon. Naomi Reice Buchwald
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

Re: *SoundExchange, Inc. v. Sirius XM Radio Inc.*, No. 1:24-cv-05491-NRB

Dear Judge Buchwald:

We represent Defendant Sirius XM Radio LLC[1] ("Sirius XM") in this action and write pursuant to Individual Practice Rule 2.E to outline the substantive arguments in Sirius XM's accompanying Motion for Judgment on the Pleadings and to request oral argument. The motion seeks dismissal for failure to state a claim because Plaintiff SoundExchange, Inc. ("SoundExchange"), a nonprofit private collective, has no power to sue under the federal statute it seeks to enforce.

SoundExchange has brought two claims purportedly arising under Section 114 of the U.S. Copyright Act and its implementing regulations, which provide a licensing mechanism enabling users like Sirius XM to obtain a "statutory license" for the distribution of sound recordings by way of a digital audio service such as satellite radio or internet streaming. But neither the statute nor the regulations gives SoundExchange a private right of action for royalty underpayment, and the time has long passed when Courts will "imply" rights of action where Congress has not expressly done so. *See Alexander v. Sandoval*, 532 U.S. 275, 288–91 (2001).

In a post-*Loper Bright* world, Courts now need a far more explicit statement from Congress to give any federal agency—let alone a private company appointed by the agency—the ability to exercise coercive enforcement authority. Congress knew how to supply private rights of action in multiple provisions of the Copyright Act and made the choice not to do so in Section 114. Congress's determination should be conclusive, and the claims should be dismissed with prejudice.

I.  **The Copyright Act Does Not Provide a Private Right of Action to SoundExchange**

Congress alone has the power to establish private rights of action, *see, e.g.*, *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004), and there is no dispute that Congress has not expressly authorized a private right of action in Section 114, *see* ECF No. 50 at 2. There is thus a "strong

---

[1] Sirius XM Radio LLC is the successor to Sirius XM Radio Inc. *See* ECF No. 55 (Supplemental Rule 7.1 Disclosure).

October 28, 2024  
Page 2

**Weil, Gotshal & Manges LLP**

presumption that Congress did not intend a private right of action," and a plaintiff has a "heavy burden to demonstrate otherwise." *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 433 (2d Cir. 2002). None of the factors that courts in the Second Circuit look to in considering whether the presumption against an implied right of action has been overcome is satisfied here:

*First*, Section 114 does not contain "rights-creating language" focused on SoundExchange. *Id.* at 432. It addresses the "scope of exclusive rights in sound recordings"—*i.e.*, copyrights granted to the artists and record companies who create sound recordings—and provides a mechanism for digital services to license and pay for those rights via an intermediary "collective" (currently SoundExchange) designated by the Copyright Royalty Judges. Despite ample provisions in the Copyright Act to emulate, *see, e.g.*, 17 U.S.C. §§ 115(d)(6)(C), 501(b), Congress did not grant copyright owners or this "common agent" the ability to initiate lawsuits against statutory licensees for the alleged underpayment of royalties. At most, Section 114 authorizes SoundExchange to deduct enumerated expenses before making its royalty distributions to copyright owners. *See* § 114(g)(3), (4).

*Second*, the text and structure of Section 114 show that Congress intended "alternative method[s] of enforcement," short of a private right of action. *Halebian v. Berv*, 631 F. Supp. 2d 284, 299 (S.D.N.Y. 2007) (Buchwald, J.), *aff'd in relevant part, vacated in part, remanded*, 644 F.3d 122 (2d Cir. 2011). While the statute references "arbitration proceedings" and "enforcement of rights," these terms do not empower SoundExchange to sue for alleged underpayments. The mention of "arbitration" refers to the industry-wide arbitration rate-setting processes conducted by "ad hoc arbitration panels" at the time the language was enacted, before the establishment of the CRB. And the word "enforcement" must be understood by the "company it keeps." *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961). The statute contemplates SoundExchange engaging in a number of "enforcement" activities that do not entail, imply, or require the right to initiate lawsuits in federal court. For example, it can investigate and pursue statutory licensees who have failed to make timely payments or submit timely and proper statements of accounts and reports of use, initiate audits pursuant to 37 C.F.R. §§ 380.6(a), 382.7(a), negotiate settlements related to those audit findings, and bring awareness of potential underpayments to copyright owners and holders, who are then free to enforce their own rights.

*Third*, "Congress's explicit provision of a private right of action to enforce" other sections of the Copyright Act "suggests that omission of any explicit private right to enforce" Section 114 "was intentional." *Olmsted*, 283 F.3d at 433; *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979) (explaining that explicit private rights of action in other sections of a statute shows that "when Congress wished to provide a private damage remedy, it knew how to do so expressly."). For example, Section 501 clearly provides that the owner of an exclusive right under a copyright is entitled "*to institute an action* for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b) (emphasis added). And Section 115, which covers the use and reproduction of musical works under a compulsory license analogous to the Section 114 statutory license at issue in this matter—including license payment administration by a similar intermediary entity (the Mechanical Licensing Collective, or the "MLC")—has a subsection entitled "Legal enforcement efforts" which explicitly allows the MLC to "commence

October 28, 2024                                                                                              **Weil, Gotshal & Manges LLP**
Page 3

an action in an appropriate district court of the United States for damages and injunctive relief." *Id.* § 115(d)(6)(C).

*  *  *

Nor are extra-textual policy reasons sufficient to recognize an implied right. Without a showing of congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *See Sandoval*, 532 U.S. at 286–87 (citation omitted). SoundExchange's letters to the Court in this case illustrate just how one-sided policy arguments can be: SoundExchange has offered no textual, structural, or policy reason as to how, if "Section 114 evinces *no* [Congressional] intent" to imply "a right of action permitting a statutory licensee [like Sirius XM] to recover *overpaid* royalties," ECF No. 53 at 3 (emphasis added), the same statute *can* "display[] an intent" to allow SoundExchange to "sue to recover *underpaid* royalties" from those same statutory licensees, ECF No. 50 at 2 (emphasis added). Congress did not intend to provide a right of action in *any* direction under Section 114, and SoundExchange's one-sided and arbitrary gloss on the statute is precisely why decisions over who has a private right of action are best left to Congress.

## II. Other Doctrinal Considerations Compel Dismissal

Whether SoundExchange has a private right of action to sue may not strictly present a question of subject matter jurisdiction or Article III standing, *see Bell v. Hood*, 327 U.S. 678, 682–85 (1946); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998), but the issue certainly implicates SoundExchange's right or ability to press the machinery of Article III courts into service on these claims. Without a right of action, the case simply does not belong in this Court.

Additionally, there are significant separation of powers issues at play in this case. The Supreme Court's recent holding in *Loper Bright Enterprises v. Raimondo* reaffirmed "the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment," and not by deferring to the "plausible" or "not unreasonable" views of agencies like the Copyright Royalty Board, let alone *private* litigants appointed by the CRB, such as SoundExchange. 144 S. Ct. 2244, 2261 (2024). And in *Nestlé USA, Inc. v. Doe*, the Supreme Court reiterated that "judicial creation of a cause of action" where Congress has not expressly provided one threatens severe consequences for separation of powers because "'a federal court's authority to recognize a damages remedy must rest at bottom on a statute enacted by Congress[,]' . . . [and] any judicially created cause of action risks 'upset[ting] the careful balance of interests struck by [] lawmakers.'" 593 U.S. 628, 636–37 (2021) (citation omitted).

The key takeaway from these cases is that if a court concludes there is a void in a statute, it is for Congress, and Congress alone, to fill. Congress knows how to provide a private right of action in the Copyright Act and has not done so here. That decision should be respected, and SoundExchange's claims should therefore be dismissed with prejudice because no amendment could cure this defect.

Dated: October 28, 2024

Respectfully submitted,

By: __/s/ Todd Larson__

Todd Larson  
WEIL, GOTSHAL & MANGES LLP  
767 Fifth Avenue  
New York, NY  10153  
Telephone: (212) 310-8238  
Facsimile: (212) 310-8007  
Todd.Larson@weil.com

Andrew S. Tulumello (admitted *pro hac vice*)  
Crystal L. Weeks (admitted *pro hac vice*)  
WEIL, GOTSHAL & MANGES LLP  
2001 M Street NW, Suite 600  
Washington, DC 20036  
Telephone: (202) 682-7100  
Facsimile: (202) 857-0940  
Drew.Tulumello@weil.com  
Crystal.Weeks@weil.com

*Counsel for Defendant Sirius XM Radio LLC*