# EXHIBIT 4

IN THE

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

### 16-7041

◆◆◆

SOUNDEXCHANGE, INC.,

*Plaintiff-Appellant,*

— v. —

MUZAK LLC,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
NO. 1:15-CV-00476-RCL
JUDGE ROYCE C. LAMBERTH

## SUPPLEMENTAL BRIEF FOR DEFENDANT-APPELLEE MUZAK LLC

BRIAN M. WILLEN
WILSON SONSINI GOODRICH
& ROSATI, P.C.
1301 Avenue of the Americas,
40th Floor
New York, New York 10019
(650) 849-3340
bwillen@wsgr.com

GARY R. GREENSTEIN
WILSON SONSINI GOODRICH
& ROSATI, P.C.
1700 K Street, N.W., 5th Floor
Washington, D.C. 20006
(202) 973-8800
ggreenstein@wsgr.com

*Attorneys for Defendant-Appellee*

January 3, 2017

# TABLE OF CONTENTS

<u>**Page**</u>

TABLE OF AUTHORITIES ....................................................................... ii

GLOSSARY ............................................................................................... vi

INTRODUCTION ....................................................................................... 1

SUMMARY OF ARGUMENT ................................................................... 2

ARGUMENT ............................................................................................... 5

I.   THE DISTRICT COURT HAD JURISDICTION TO
     ADJUDICATE SOUNDEXCHANGE'S CLAIM FOR
     UNDERPAYMENT OF ROYALTIES UNDER SECTION 114'S
     STATUTORY LICENSE ..................................................................... 5

II.  THE COPYRIGHT ROYALTY BOARD DOES NOT HAVE
     JURISDICTION TO DECIDE THE QUESTION IN THIS CASE ........ 10

III. THE REGISTER OF COPYRIGHTS DOES NOT HAVE
     JURISDICTION TO DECIDE THE QUESTION IN THIS CASE ........ 16

IV.  REFERRAL TO THE BOARD IS NOT AUTHORIZED UNDER
     THE DOCTRINE OF PRIMARY JURISDICTION ............................. 21

CONCLUSION........................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allnet Commc'n Serv., Inc. v. Nat'l Exch. Carrier Ass'n, Inc.,*
965 F.2d 1118 (D.C. Cir. 1992) ................................................................23

*Am. Cetacean Soc'y v. Baldridge,*
604 F. Supp. 1398 (D.D.C. 1985) ..........................................................22

*Christianson v. Colt Indus. Operating Corp.,*
486 U.S. 800 (1988)..................................................................................9

*Goya Foods, Inc. v. Tropicana Prods., Inc.,*
846 F.2d 848 (2d Cir. 1988) ..................................................................23

*Herero People's Reparations Corp. v. Deutsche Bank, A.G.,*
370 F.3d 1192 (D.C. Cir. 2004) ..............................................................10

*Int'l Union, Sec., Police & Fire Professionals of Am. v. Faye,*
828 F.3d 969 (D.C. Cir. 2016) ................................................................10

*Ray Charles Found. v. Robinson,*
795 F.3d 1109 (9th Cir. 2015) ................................................................9

*SoundExchange, Inc. v. Sirius XM Radio Inc.,*
65 F. Supp. 3d 150 (D.D.C. 2014) ................................................1, 23, 24

*Steel Co. v. Citizens for Better Env't,*
523 U.S. 83 (1998)..................................................................................10

*United States v. Philip Morris USA Inc.,*
686 F.3d 832 (D.C. Cir. 2012) ................................................................22

*United States v. W. Pac. R.R. Co.,*
352 U.S. 59 (1956)..................................................................................22

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.,*
535 U.S. 635 (2002)..................................................................................9

## STATUTES

17 U.S.C. § 106(6) .................................................................................................5

17 U.S.C. § 114(a) .................................................................................................5

17 U.S.C. § 114(d)(1) ............................................................................................5

17 U.S.C. § 114(d)(2) ............................................................................................5

17 U.S.C. § 114(f)(1) .............................................................................................5

17 U.S.C. § 114(f)(1)(B) ........................................................................................6

17 U.S.C. § 114(f)(1)(C) .........................................................................3, 12, 13

17 U.S.C. § 114(f)(2) .............................................................................................5

17 U.S.C. § 114(f)(2)(B) ...................................................................................6, 8

17 U.S.C. § 114(f)(2)(C) ...............................................................1, 3, 12, 13

17 U.S.C. § 114(f)(4)(B) ...................................................................................8, 9

17 U.S.C. § 114(f)(4)(B)(i) ....................................................................................5

17 U.S.C. § 114(g)(2) .............................................................................................6

17 U.S.C. § 114(g)(3) .............................................................................................6

17 U.S.C. § 114(j)(8) ..............................................................................................8

17 U.S.C. § 114(j)(11) ............................................................................8, 13, 14

17 U.S.C. § 701(a) ...............................................................................................16

17 U.S.C. § 701(b)(2) ...........................................................................................16

17 U.S.C. § 801(b) ...........................................................................3, 10, 11, 22

17 U.S.C. § 801(b)(1) .......................................................................6, 10, 22

17 U.S.C. § 802(a)(1) ...................................................................................17, 22

17 U.S.C. § 802(f)(1)(A)(ii) ................................................................................17

17 U.S.C. § 802(f)(1)(B) ............................................. 1, 4, 16, 17, 18, 19, 20, 21, 24

17 U.S.C. § 803 ............................................................................. 3, 11

17 U.S.C. § 803(a) ................................................................................ 11

17 U.S.C. § 803(c)(4) ........................................................................... 24

17 U.S.C. § 803(d) .................................................................................. 1

17 U.S.C. § 804 ............................................................................. 3, 11

17 U.S.C. § 804(a) ................................................................................ 11

17 U.S.C. § 804(b) ................................................................................ 12

17 U.S.C. § 804(b)(3) .............................................................................. 3

17 U.S.C. § 804(b)(3)(A) ...................................................................... 11

17 U.S.C. § 804(b)(3)(B) ...................................................................... 11

17 U.S.C. § 804(b)(3)(C) ...................................................................... 12

28 U.S.C. § 1338 ........................................................................ 2, 5, 9, 25

## RULES

37 C.F.R. § 380.2(a) .............................................................................. 6

37 C.F.R. § 382.3(a) ......................................................................... 7, 15

37 C.F.R. § 383.2(f) .............................................................................. 14

37 C.F.R. § 383.3(a) .............................................................................. 15

37 C.F.R. § 383.3(a)(1) ........................................................................... 7

78 Fed. Reg. 23054 (Apr. 17, 2013) ................................................... 15

80 Fed. Reg. 36927 (June 29, 2015) ................................................... 15

81 Fed. Reg. 255 (Jan. 5, 2016) ........................................................... 7

## OTHER AUTHORITIES

H.R. Conf. Rep. No. 105-796 (1998) ...................................................................13

# GLOSSARY

| | |
|---|---|
| **CRB** | Copyright Royalty Board |
| **CRJ** | Copyright Royalty Judge |
| **PSS** | Preexisting Subscription Service |
| **MVPD** | Multichannel Video Programming Distributor |

## INTRODUCTION

On November 16, 2016, following oral argument, the Court issued an Order requesting supplemental briefing on the following questions:

1.    What is the source of appellant's cause of action?

2.    Whether the Copyright Royalty Board, *see* 17 U.S.C. § 114(f)(2)(C), and/or the Register of Copyrights, *see* 17 U.S.C. § 802(f)(1)(B), have jurisdiction to determine if appellee is entitled to pay the statutory royalty rate set for a "preexisting subscription service" for transmissions other than the services it provides to Dish Network customers, and thereby to determine the appropriate royalty rate due to appellant, subject to review in the U.S. Court of Appeals for the District of Columbia Circuit, *see* 17 U.S.C. § 803(d).

3.    Whether, if the Copyright Royalty Board – Register of Copyrights do have jurisdiction to decide this issue, the district court lacked jurisdiction to adjudicate appellant's claim.

4.    Whether, even if the district court had authority to entertain appellant's claim, this court should refer the question to the Copyright Royalty Board under the doctrine of primary jurisdiction. *See, e.g.*, *SoundExchange, Inc. v. Sirius XM Radio Inc.*, 65 F. Supp. 3d 150 (D.D.C. 2014).

Defendant-Appellee Muzak LLC ("Muzak") answers those questions as follows. The District Court had federal-question jurisdiction over the cause of action brought by Plaintiff-Appellant SoundExchange ("SoundExchange") for underpayment of royalties under Section 114 of the Copyright Act, 17 U.S.C. § 114. Neither the Copyright Royalty Board ("Board") nor the Register of Copyrights ("Register") had (or has

jurisdiction to adjudicate that claim. And because the Board lacks jurisdiction, and has no special competence over the legal question presented here, the primary jurisdiction doctrine does not apply.

Accordingly, the District Court was right to decide the pure question of statutory interpretation that it was called upon to resolve—and it decided that issue correctly, holding that Muzak was a "preexisting subscription service" for all the transmissions at issue in this case. That decision should be affirmed.

## SUMMARY OF ARGUMENT

SoundExchange's cause of action, while lacking in merit, falls well within the jurisdiction of the federal courts. That claim arises under Section 114 of the Copyright Act, which authorizes "preexisiting subscription services" ("PSS") to pay royalties according to a rate-setting standard that recognizes those entities' early entry into the market for noninteractive subscription-based audio-only digital audio transmissions. Whether Muzak paid the right amount under Section 114 turns on a pure question of statutory interpretation: Does Muzak's undisputed status as a PSS resulting from its historical transmissions over the Dish Network apply to materially identical transmissions it makes on other satellite and cable systems? The District Court was authorized by 28 U.S.C. § 1338 to resolve this dispute over the meaning of a federal copyright statute.

By contrast, neither the CRB nor the Register would have had any authority to adjudicate this case. Congress has not given plenary authority to either of those bodies to interpret or apply the Copyright Act. The Board is a tribunal of limited jurisdiction: it is authorized to "make determinations and adjustments of reasonable terms and rates of royalty payments" through circumscribed rate-setting "proceedings." 17 U.S.C. §§ 801(b), 803, 804. These forward-looking proceedings to set the royalties for the Section 114 statutory license normally occur only on a fixed quinquennial schedule set by statute. *Id.* § 804(b)(3).

In Section 114(f), Congress provided a limited exception that allows parties to trigger an off-cycle rate-setting proceeding where a "new type of subscription digital audio transmission service on which sound recordings are performed is or is about to become operational[.]" 17 U.S.C. §§ 114(f)(1)(C), 114(f)(2)(C). But Muzak's transmissions to non-Dish customers are not a "new type" of service. They are part of an existing service materially indistinguishable from what Muzak has offered for decades via the Dish Network. Indeed, the Board has *already determined* the royalty rates applicable to this type of service for both PSS and non-PSS entities. The only question regarding those transmissions is whether Muzak qualifies as a PSS while making them. While Section 114(f) confirms that Muzak remains a PSS and that its status is not artificially limited to its

-3-

historical service offerings, that provision does not provide a basis for allowing the Board to assume jurisdiction over this case.

As for the Register, her authority under Section 802(f)(1)(B) to decide a "novel" question of law is limited to questions that arise during—and are "material" to—an ongoing rate-setting proceeding. In any event, the Register can only act under this provision based on a referral from the Board, not from a court. That is what happened in the 2006 proceeding. And while the Register's 2006 decision does bear on this case (because it confirms that the PSS definition covers business entities not service offerings), the Register did not hold, and as a matter of law could not have held, that Muzak's eligibility for PSS treatment is limited to transmissions it makes to Dish customers.

Finally, because the Board lacks jurisdiction over SoundExchange's underpayment of royalties claim, there would have been no basis for the District Court to refer this case under the doctrine of primary jurisdiction. Engaging in a straightforward act of statutory construction, the District Court properly resolved the legal question that was presented to it. There is no jurisdictional—or substantive—basis for this Court to overturn that ruling.

## ARGUMENT

### I. THE DISTRICT COURT HAD JURISDICTION TO ADJUDICATE SOUNDEXCHANGE'S CLAIM FOR UNDERPAYMENT OF ROYALTIES UNDER SECTION 114'S STATUTORY LICENSE

The cause of action that SoundExchange asserts in this case is for underpayment of royalties under the statutory license granted to Muzak under Section 114 of the Copyright Act. JA15-16 (¶¶41-48). That claim arises under federal copyright law and thus was properly adjudicated by the District Court under the jurisdiction conferred by 28 U.S.C. § 1338(a).

The Copyright Act gives the owner of a copyright in a sound recording a narrow exclusive right to "perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. § 106(6); *accord* § 114(a). Section 114 limits that exclusive right by exempting some transmissions and retransmissions altogether. § 114(d)(1). It also provides that certain non-exempt subscription digital audio transmissions "shall be subject to statutory licensing[.]" § 114(d)(2). Any person who wishes to perform a sound recording under this statutory license may do so "by paying royalty fees in accordance with this subsection[.]" § 114(f)(4)(B)(i).

Section 114 does not directly set these royalty fees. It instead allows rate-setting to be done through "[p]roceedings under chapter 8," i.e., proceedings before the Copyright Royalty Judges ("CRJs") that make up the Board (§ 114(f)(1)-(2)). The statute instructs the CRJs to use different

considerations in establishing "rates and terms" for the royalty payments depending on whether the performing entity is a "preexisting subscription service" or a "new subscription service." § 114(f). For a PSS, the statute directs that "in addition to the objectives set forth in section 801(b)(1) …, the [CRJs] may consider the rates and terms for comparable types of subscription digital audio transmission services and comparable circumstances under voluntary license agreements described in subparagraph (A)." § 114(f)(1)(B). In contrast, for a "new" subscription service, the CRJs "shall establish rates and terms that most clearly represent the rates and terms that would have been negotiated in the marketplace between a willing buyer and a willing seller." § 114(f)(2)(B).

The rates determined by the Board "shall … be binding" on entities performing sound recordings under the statutory license. §§ 114(f)(1)(B), 114(f)(2)(B). And the statute authorizes an "agent designated to distribute receipts from the licensing of transmissions" to collect royalty payments on behalf of copyright owners and performers, distribute such royalties in accordance with statutory allocations, and to deduct certain costs from those receipts prior to distribution. § 114(g)(2)-(3). SoundExchange is that designated agent (37 C.F.R. § 380.2(a)), and pursuant to the scheme established by Section 114, it collects statutory royalties from entities

performing under the statutory license and distributes those royalties to record labels and artists. JA6 (¶8).

SoundExchange's claim in this case arises directly from this statutory licensing arrangement. SoundExchange concedes that Muzak is a PSS for the transmissions it makes to customers of the Dish Network. JA4 (¶1). It asserts, however, that when Muzak makes otherwise identical transmissions to customers of other cable and satellite systems, Muzak ceases to be a PSS and must pay royalties as if it were a "new" subscription service. JA15-16 (¶45). Significantly, this is *not* a dispute over how to set the applicable royalties applicable to Muzak's transmissions or whether the designated royalties are reasonable. The Board has already determined what the applicable rates should be for both PSS entities and new subscription services. JA9 (¶17); *compare* 37 C.F.R. § 382.3(a) (2015) (royalty rate for PSS) *with* 37 C.F.R. § 383.3(a)(1) (2015) (royalty rate for new subscription service).[1] Those rates are not challenged here. Instead, the only issue raised by SoundExchange's claim is which of those extant royalties applies to the transmissions at issue here.

---

[1] The current PSS rates expire December 31, 2017.  The Board has initiated a successor rate adjustment proceeding to establish PSS rates for the five-year period January 1, 2018 - December 31, 2022. *See* 81 Fed. Reg. 255 (Jan. 5, 2016).

That is purely a question of statutory interpretation. Section 114(j)(11) defines "preexisting subscription service" based on the "means" that the entity is using to perform sound recordings. Muzak Br. 24-28. Applying that definition as written, Muzak is a PSS for performances it makes "by means of noninteractive audio-only subscription digital audio transmissions," because Muzak "was in existence and was making such transmissions *to the public* for a fee on or before July 31, 1998[.]" 17 U.S.C. § 114(j)(11) (emphasis added). The definition does not limit PSS entities to their existing customers. On this understanding, SoundExchange's claim fails because Muzak, for all of the transmissions at issue, has been paying the royalties that the Board established for PSS entities. JA15 (¶44). Accordingly, the District Court's determination that an entity "which qualified as a PSS can make the same type of transmissions contemplated by § 114(j)(11) to new customers and retain the PSS royalty rate" (JA75) correctly resolved this case.

On the other hand, under SoundExchange's artificial reading of Section 114(j)(11)—where Muzak's PSS status turns on the identity of its customers rather than the nature of its transmissions—Muzak would be a "new" subscription service. 17 U.S.C. § 114(j)(8). If so, Muzak would be obligated by the statute to pay the royalties that the Board has set for those services. §§ 114(f)(2)(B), 114(f)(4)(B). This is the genesis for

-8-

SoundExchange's causes of action for underpayment of statutory royalties. JA16 (¶¶46-47). That claim arises directly out of the licensing regime created by Section 114. SoundExchange asserts that Muzak has violated its payment obligations under that statute and so made payments to SoundExchange that are less than what the Copyright Act requires. *Id.*

While SoundExchange is wrong on the merits, its claim falls squarely within the original subject matter jurisdiction of the district courts over "any civil action arising under any Act of Congress relating to … copyrights[.]" 28 U.S.C. § 1338(a); *accord Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 807-09 (1988) (jurisdiction under Section 1338 in a patent case either where "federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims").[2]

_____

[2] While Section 114 does not expressly provide a cause of action for underpayment of statutory royalties, one may be implied by the provisions of the statute discussed above, including Section 114(f)(4)(B). C*f. Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1122 (9th Cir. 2015) (implied right of action under Copyright Act to challenge termination of copyright grants). In any event, it is well settled that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case." *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 642-

(continued...)

-9-

In short, the District Court had full authority to address the merits of SoundExchange's claim. And because its ruling properly applies Section 114, in light of the text of the statute and the legislative history (JA76-77), that decision should be affirmed.

## II.   THE COPYRIGHT ROYALTY BOARD DOES NOT HAVE JURISDICTION TO DECIDE THE QUESTION IN THIS CASE

In contrast to the District Court, the Copyright Royalty Board would not have had jurisdiction over SoundExchange's claim. The Board is a tribunal with a limited statutory purpose. The functions of the CRJs who make up the Board are enumerated by Section 801(b) of the Copyright Act. As relevant to the Section 114 statutory license, CRJs are authorized to "make determinations and adjustments of reasonable terms and rates of royalty payments as provided" in that provision. 17 U.S.C. § 801(b)(1). The

———————————

(...continued from previous page)

643 (2002) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998)); *accord Int'l Union, Sec., Police & Fire Professionals of Am. v. Faye*, 828 F.3d 969, 972 (D.C. Cir. 2016). Jurisdiction clearly existed in this case. Even if this Court has doubts about the source of SoundExchange's (implied) cause of action, therefore, the District Court had authority to dismiss that claim on the merits. *See Herero People's Reparations Corp. v. Deutsche Bank, A.G.*, 370 F.3d 1192, 1194 (D.C. Cir. 2004) ("[T]he question whether a cause of action exists calls for a judgment on the merits, not jurisdiction.").

-10-

Board performs these functions through circumscribed rate-setting "proceedings." § 803(a). The process for initiating these proceedings, and the procedures that apply to them, are set out specifically in the statute. §§ 803, 804. There is no other basis for the CRJs to conduct proceedings outside of the circumstances set forth by Congress. § 801(b) (setting forth what the functions of the CRJs "shall be").

There are only two scenarios where rate-setting proceedings are authorized in connection with the Section 114 license. The first are the staggered proceedings initiated by petitions filed by "any owner or user of a copyrighted work whose royalty rates are specified by this title" requesting "a determination or adjustment of the rate." § 804(a). Congress has carefully regulated the timing of these proceedings. They are conducted once every five years, on a schedule prescribed by the statute. § 804(b)(3)(A) (schedule for "new subscription services"); § 804(b)(3)(B) (schedule for PSS entities). These proceedings are not available here. At the time SoundExchange filed this case (in April 2015), there was no scheduled proceeding for PSS entities like Muzak. *See* § 804(b)(3)(B). In any event, these rate-settings are forward-looking: they "determine reasonable terms and rates of royalty payments … to be effective" for the next five-year period. § 804(b)(3)(A)&(B). But SoundExchange's claim is primarily

backward-looking. It seeks reimbursement for alleged underpayment of statutory royalty fees based on Muzak's past transmissions. JA15.

The second scenario is the one presented by Section 114(f)—the provision this Court identified as a potential source of Board jurisdiction. JA70. This provision allows copyright owners and/or entities providing subscription services to initiate rate-setting proceedings outside the strict cycle established by Section 804(b). There are separate provisions for PSS entities and "new subscription services." 17 U.S.C. §§ 114(f)(1)(C) (for a PSS offering a "new type of subscription digital audio transmission service"), 114(f)(2)(C) (for "new subscription service"); *accord* § 804(b)(3)(C) (establishing procedures for proceedings triggered through Section 114).

As the District Court recognized, Section 114(f)(1)(C) is very significant for the *merits* of this case. That the statute specifically allows a PSS to offer "a new type of subscription digital audio transmission service" confirms that SoundExchange's core position in this case is incorrect. Section 114(f)(1)(C) shows beyond any doubt that Congress did not confine PSS entities like Muzak to their "existing service offerings" as of July 1998. Instead, this provision "is clear evidence that Congress did at least intend for a PSS to be able to provide some 'new type' of service and still utilize the PSS royalty rate." JA76. It reinforces what the text of the PSS definition indicates: that insofar as Muzak continues to make "noninteractive audio-

-12-

only subscription digital audio transmissions," 17 U.S.C. § 114(j)(11), it can expand its business while still qualifying as a PSS. Muzak Br. 34-39; *see also* H.R. Conf. Rep. No. 105-796, at 89 (PSS permitted to make "transmissions similar in character" to its historic transmissions).

While Section 114(f)(1)(C) is incompatible with SoundExchange's reading of the statute, it does not create a jurisdictional basis for the Board to resolve this case. That is because the off-cycle rate-making mechanism established by this provision is available only where a "***new type of*** subscription digital audio transmission service on which sound recordings are performed is or is about to become operational"—and only for a limited purpose, "determining reasonable terms and rates of royalty payments with respect to such new type of transmission service" under the formulas established by Section 114. 17 U.S.C. § 114(f)(1)(C) (emphasis added); *accord* § 114(f)(2)(C).

The transmissions that Muzak is making are *not* part of a "new type" of subscription service. While that term is not defined, it necessarily refers to a service materially different from one already being offered under the Section 114 statutory license. That is not the situation here. Muzak's transmissions to its non-Dish satellite and cable customers are part of exactly the *same* type of subscription service that Muzak has been offering over the Dish Network. All of these transmissions involve audio-only

music channels that residential subscribers access through their televisions as part of a satellite or cable subscription package. JA12-13 (¶¶25-26, 30-31).

Far from being a new type of service, this offering is so well established that it has been defined by the Board. 37 C.F.R. § 383.2(f) ("A Service is a non-interactive … audio-only subscription service … that is transmitted to residential subscribers of a television service through a Provider which is marketed as and is in fact primarily a video service[.]"). When Muzak started transmitting to non-Dish customers, therefore, it was not providing a "new type" of subscription service. It was not even making a new service offering. Muzak was simply expanding the range of customers for an established service that it had been providing since before the enactment of the Digital Millennium Copyright Act.[3]

―――――――――――――

[3] This reality makes this an even easier case on the merits for Muzak. Given that Muzak would be a PSS even if it were offering an entirely "new type" of subscription service (as long as it involved performances using the "means" set out in Section 114(j)(11)), it even more clearly qualifies as a PSS when it provides an *existing* service indistinguishable (other than the identity of the providers whose customers it is serving) from the offerings it has made for decades. Indeed, even under SoundExchange's reading of the statute, where PSS entities are limited to their "existing service offerings," Muzak should prevail because its non-Dish transmissions *are* part of the same "Service" as its Dish transmissions. *Cf.* 37 C.F.R. § 383.2(f).

Because Muzak was not commencing a new type of service when it started serving non-Dish customers, there would have been no basis for the parties to have triggered an off-cycle rate-making proceeding under Section 114(f). But doing so would have been pointless in any event, as *the Board has already determined the "rates and terms of royalty payments"* applicable to this service. It has done so both when the service is offered by a PSS and when it is offered by a "new subscription service." *See* Final Rule and Order in Determination of Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio Services, Docket No. 2011-1 CRB PSS/Satellite II, 78 Fed. Reg. 23054 (Apr. 17, 2013), *codified at* 37 C.F.R. § 382.3(a) (setting rates for PSS entities) (emphasis added); Final Rule in Determination of Terms and Royalty Rates for Ephemeral Reproductions and Public Performance of Sound Recordings by a New Subscription Service, Docket No. 14-CRB-0002-NSR (2016-2020), 80 Fed. Reg. 36927 (June 29, 2015), *codified at* 37 C.F.R. § 383.3(a) (setting rates through 2020 for "new subscription services" in connection with "music services provided to residential subscribers as part of a cable or satellite television bundle").

As such, this simply is not a situation to which Section 114(f)'s procedures apply. The issue here is not what rates should be established for Muzak's transmissions, but instead which of the two previously

-15-

determined rates should apply for a type of service that has long existed. JA9 (¶17). That is purely a question of statutory interpretation, asking whether Muzak remains a PSS when it provides a materially identical set of transmissions to additional customers. No provision of the Copyright Act provides a basis for putting that issue to the Copyright Royalty Board.

## III. THE REGISTER OF COPYRIGHTS DOES NOT HAVE JURISDICTION TO DECIDE THE QUESTION IN THIS CASE

The Register of Copyrights is equally lacking in authority to decide the legal issue presented in this case. The Register is appointed by the Librarian of Congress as the director of the U.S. Copyright Office. 17 U.S.C. § 701(a). The Register has certain powers specified by statute, including to "[p]rovide information and assistance to Federal departments and agencies and the Judiciary on national and international issues relating to copyright, other matters arising under this title, and related matters." § 701(b)(2). But the Register does not have a roving commission to resolve disputes between private parties over how to interpret the Copyright Act.

The Court asked the parties to address Section 802(f)(1)(B), but this provision does not confer jurisdiction on the Register to determine, in connection with this case, whether Muzak "is entitled to pay the statutory royalty rate set for a 'preexisting subscription service' for transmissions other than the services it provides to Dish Network customers[.]" JA70. This provision allows the Register to resolve legal issues that arise in the

-16-

context of rate-setting proceedings being conducted before Copyright Royalty Judges: "In any case in which a novel *material* question of substantive law concerning an interpretation of those provisions of this title that are *the subject of the proceeding* is presented," the CRJs "shall request a decision of the Register of Copyrights, in writing, to resolve such novel question." 17 U.S.C. § 802(f)(1)(B) (emphases added).

The purpose of this mechanism is clear. Rate-setting proceedings may sometimes turn on disputed legal questions regarding the Copyright Act. But not all of the CRJs tasked with handling those proceedings are required to have "significant knowledge of copyright law[.]" § 802(a)(1). Accordingly, where novel issues about the interpretation of the statute arise during a proceeding, Congress wanted the Board to be able to get help from the Register to ensure the coherent application of the law. *See also* § 802(f)(1)(A)(ii) (allowing CRJ or "any participant in a proceeding" to "request from the Register of Copyrights an interpretation of any material questions of substantive law that relate to the construction of provisions of this title and arise in the course of the proceeding"). In keeping with this goal, a referral of a legal issue to the Register is permitted only where the question is "material" to an ongoing "proceeding" before the Board. § 802(f)(1)(B). The statute does not allow the Register to address such questions that are immaterial to—or arise outside the context of—an

existing rate-setting proceeding. And the Register is authorized to act only upon a "request" from the CRJs (or the "participants" in the ongoing rate-setting proceeding)—not from a federal court.

This provision does not apply here. As discussed above, this case involves no ongoing rate-setting proceeding, as it arises solely out of SoundExchange's claim for underpayment of statutory royalties that have already been established. The question regarding Muzak's status as a PSS for its non-Dish transmissions was not "presented" in, and is not "material" to, any such proceeding. And neither the Copyright Royalty Board nor any CRJ has asked that this question be referred to the Register. None of the requirements needed for the Register to act under Section 802(f)(1)(B) are present in this case. As such, there is no basis for the Court to put the legal question at issue to the Register or for the Register to assume jurisdiction to decide that question.

The posture of this case is very different from the 2006 proceeding in which the novel question of law provision was successfully invoked. *See* SA46-54; Muzak Br. 11-12, 47-51. At that time, the Board was in the midst of two rate-setting proceedings for performances under the Section 114 statutory license—one for "new subscription services" and one for PSS entities. SA47. Legal questions arose in those proceedings as to whether the transmissions being made by Sirius Satellite Radio ("Sirius") and DMX, Inc.

-18-

("DMX") qualified for the PSS royalty. *Id.* Resolving those legal questions would determine in which of the two proceedings Sirius and DMX would participate. Accordingly, SoundExchange asked the Board to refer the novel material questions to the Register under Section 802(f)(1)(B), and the Board agreed to do so. SA47; JA30. After receiving briefing from SoundExchange, Sirius, and DMX, the Register issued an opinion resolving the questions referred to it by the Board. JA21-65; SA46-54.

The use of the Section 802(f)(1)(B) procedure in 2006 does not, however, provide a precedent for its use here. The posture of this case is entirely different, as the legal question it presents did not arise in, and is not material to, any existing rate-setting proceeding. Nor, contrary to what SoundExchange has argued (Reply Br. 15-17), does the Register's 2006 Opinion resolve the legal issue presented in this case.

The relevant question of law that arose in the 2006 rate-making proceeding was whether Sirius could claim PSS status for the transmissions it had recently started making to Dish customers. SA47, 50. SoundExchange argued that it could not because Muzak was the PSS: "it is clear that the PES Compulsory License is limited to the specific entities making transmissions as of July 31, 1998. Sirius, of course, was not making transmissions as of July 31, 1998. Muzak was the company making transmissions over the DiSH Network as of that date." JA51; *see also id.*

("Muzak (and not EchoStar or Sirius) is the entity eligible for the PES Compulsory License."). That is precisely what the Register held. SA53.

While SoundExchange and the Register were both clear in their understanding that Muzak, *as a business entity*, was the relevant PSS (JA52; SA53), the question whether Muzak would be entitled to the PSS royalty if it started making transmissions to non-Dish customers was not at issue in 2006. Muzak was not doing so at the time. As such, any legal issues raised by that hypothetical situation could not possibly have been relevant to the underlying rate-setting proceeding. For the Register to have addressed that question would have exceeded its authority under Section 802(f)(1)(B), which is limited to resolving questions of law "material" to the proceeding

that is underway. The Register's 2006 Opinion cannot be read to violate that basic statutory mandate.[4]

In short, Section 802(f)(1)(B) does not give jurisdiction to the Register to resolve the legal question presented in this case, and it confirms that the Register did not (and could not have) decided that issue in 2006.

## IV. REFERRAL TO THE BOARD IS NOT AUTHORIZED UNDER THE DOCTRINE OF PRIMARY JURISDICTION

"When adjudicating a claim would 'require[] the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body,' the primary jurisdiction doctrine

---

[4] SoundExchange has pointed to this passage: "Muzak was the pioneer music service that incurred both the benefits and risks that came with its investment, and one such benefit was its status as preexisting subscription service so long as it provided its music offerings over the DiSH Network." SA53. But this passage simply echoes SoundExchange's argument that Muzak—rather than some other entity—is the PSS for any transmissions made to Dish customers. The Register was explaining why Sirius cannot step into Muzak's shoes. It was saying that Muzak (not Sirius) gets the benefit of the PSS royalty *in connection with the Dish transmissions* for so long as Muzak keeps making those transmissions. Muzak Br. 49-50. In making this observation, the Register was not—and could not have been—issuing an advisory opinion regarding a non-Dish service that Muzak was not offering. To read the Opinion that way would not only run afoul of Section 802(f)(1)(B), it would be unfair to Muzak, which (unlike SoundExchange) was not involved in the briefing before the Register.

permits a court to suspend the judicial process 'pending referral of such issues to the administrative body for its view.'" *United States v. Philip Morris USA Inc.*, 686 F.3d 832, 837 (D.C. Cir. 2012) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956)). This doctrine does not apply here.

As discussed above, the Copyright Act sets out the specific duties of the Copyright Royalty Board. 17 U.S.C. § 801(b). As relevant to the Section 114 statutory license, the Board's role is limited to making "determinations and adjustments of reasonable terms and rates of royalty payments[.]" § 801(b)(1). But this case does not require any determination of the "reasonable terms and rates" for Muzak's royalty payments under Section 114. Those terms and rates have already been determined. There is nothing more for the Board to do. This case does not involve rate-setting, but instead seeks resolution of a pure question of statutory interpretation. Deciding that issue of law is not within the special competence of the Board. *Cf.* § 802(a)(1) (requiring that only one of the three CRJs have "significant knowledge of copyright law"). It is a matter that can and should be decided by the federal courts. *Accord Am. Cetacean Soc'y v. Baldridge*, 604 F. Supp. 1398, 1410 (D.D.C.) ("Questions of law are particularly within the competence of the judiciary to resolve, and are not subject to initial agency consideration under the primary jurisdiction

-22-

doctrine."), *aff'd*, 768 F.2d 426 (D.C. Cir. 1985), *rev'd sub nom. Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221 (1986); *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 853 (2d Cir. 1988) (primary jurisdiction not appropriate to resolve legal questions that are "within the conventional competence of the courts") (citation omitted).

*SoundExchange, Inc. v. Sirius XM Radio Inc.*, 65 F. Supp. 3d 150 (D.D.C. 2014), does not suggest otherwise. While that was also a suit brought by SoundExchange for underpayment of copyright royalties under a statutory license, the similarities with this case stop there. *Sirius XM* involved technical issues involving interpretation of the Board's own regulations. The question raised in the case was whether Sirius was improperly calculating the "gross revenues" on which royalty calculations are based under the Board's "Satellite II" rate-setting proceeding. *Id.* at 153-55. In holding that primary jurisdiction applied, the court explained that resolving that issue required clarification of the technical and policy judgments built into the Board's earlier determination. That was a "question best posed to the CRB itself." *Id.* at 156. The case directly puts at issue the Board's "interpretation of its own regulations, on which it is owed great deference." *Id.* (quoting *Allnet Commc'n Serv., Inc. v. Nat'l Exch. Carrier Ass'n, Inc.*, 965 F.2d 1118, 1122 (D.C. Cir. 1992)). And the Court found that

the Board had "continuing jurisdiction" under Section 803(c)(4) to clarify the terms of its prior rate-setting determination. *Id*.

This case presents an entirely different situation. SoundExchange's claim here did not require the District Court to interpret the Board's prior rate-setting determinations or to wade into technical matters that implicate the Board's special expertise in calculating royalty rates. Instead, as explained above, this case turns entirely on whether Muzak qualifies as a PSS for the transmissions it is making to non-Dish customers. That is a purely legal issue that falls outside the Board's expertise. Section 802(f)(1)(B) confirms as much. That provision makes clear that the Board lacks statutory authority to decide novel questions of law like the one presented here. Even if such an issue had come before the Board in an actual rate-setting proceeding, the Board would not have been responsible for resolving it. Given that, it is unfathomable that Congress would have wanted federal courts to refer questions of statutory interpretation to be decided by the Board in the first instance.

Finally, in contrast to *Sirius XM*, this case does not trigger the Board's "continuing jurisdiction" to "correct any technical or clerical errors in the determination or to modify the terms, but not the rates, of royalty payments in response to unforeseen circumstances that would frustrate the proper implementation of such determination." 17 U.S.C. § 803(c)(4).

SoundExchange's claim does not involve an ambiguity or error in an earlier rate-setting proceeding. Nor does the Board have statutory jurisdiction here under any other provision of the Copyright Act. *See supra* at 10-16. Because the Board lacks jurisdiction in the first place, it plainly does not have *primary* jurisdiction. The District Court was the only entity in a position to resolve the issues raised by this case. That Court was right to decide this case and right in what it decided.

## CONCLUSION

To briefly answer the four questions posed by this Court in its Order for supplemental briefing:

- SoundExchange's cause of action for underpayment of statutory royalties arises under Section 114 of the Copyright Act, which falls within the original subject matter jurisdiction of the district courts.

- Neither the Board nor the Register of Copyrights has jurisdiction to decide the issue in this case. The Board lacks jurisdiction because there is no basis for triggering a new rate-setting proceeding under Section 114(f), and the Register lacks jurisdiction to resolve novel questions of law except based on a referral from the Board or the parties in an ongoing rate-setting proceeding.

- Because neither the Board nor the Register has jurisdiction, there is no basis for divesting the District Court of its jurisdiction under 28 U.S.C. § 1338(a) to adjudicate SoundExchange's claim.

- The Court should not refer this case to the Board under the doctrine of primary jurisdiction because the issue presented falls outside both the jurisdictional limits and the special competence of the Board as defined by Congress.

For these reasons, and those in Muzak's merits brief, this Court should retain jurisdiction over this appeal and affirm the decision of the District Court.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Brian M. Willen*
Brian M. Willen (D.C. Bar No. 490471)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Email: bwillen@wsgr.com
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Gary R. Greenstein
1700 K Street, N.W., Fifth Floor
Washington, D.C.  20006
Email: ggreenstein@wsgr.com
Telephone: (202) 973-8800
Facsimile: (202) 973-8899

*Counsel for Appellee Muzak LLC*

Dated: January 3, 2017

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of the Court's November 16, 2016 order because it contains 5,734 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Book Antiqua 14-point font.

Dated:  January 3, 2017

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Brian M. Willen*
Brian M. Willen (D.C. Bar No. 490471)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Email: bwillen@wsgr.com
Telephone:  (212) 999-5800
Facsimile:   (212) 999-5899

*Counsel for Appellee Muzak LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Supplemental Brief for Defendant-Appellee Muzak LLC to be served on counsel for Plaintiff-Appellant via Electronic Mail generated by the Court's electronic filing system (CM/ECF) with a Notice of Docket Activity:

Joshua M. Segal
Emily L. Chapuis
Devi M. Rao
David A. Handzo
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000

I certify that an electronic copy was uploaded to the Court's electronic filing system. Eight paper copies of the foregoing Supplemental Brief for Defendant-Appellee Muzak LLC will be sent to the Clerk's Office by Hand Delivery to:

Clerk of Court
United States Court of Appeals, District of Columbia Circuit
333 Constitution Avenue, N.W., Room 5423
Washington, D.C. 20001
(202) 216-7300

on this 3rd day of January 2017.

/s/ Samantha Collins
Samantha Collins