# EXHIBIT 5

**PUBLIC VERSION**

Before the
UNITED STATES COPYRIGHT ROYALTY JUDGES
LIBRARY OF CONGRESS
Washington, D.C.

|  |  |
|---|---|
| In the Matter of ) | |
|  ) | Docket No. 2006-1 CRB DSTRA |
| Determination of Rates and Terms for ) | |
| Preexisting Subscription Services and ) | |
| Satellite Digital Audio Radio Services ) | |
|  ) | |

**SIRIUS XM RADIO INC.'S
REPLY MEMORANDUM OF LAW IN FURTHER RESPONSE TO ORDER
WITHDRAWING RULING AND SOLICITING BRIEFING ON UNRESOLVED ISSUES**

R. Bruce Rich (N.Y. Bar No. 1304534)
Todd Larson (N.Y. Bar No. 4358438)
Adam B. Banks (N.Y. Bar No. 4756060)
Erin M. James (N.Y. Bar No. 5360037)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
bruce.rich@weil.com
todd.larson@weil.com
adam.banks@weil.com
erin.james@weil.com

Peter D. Isakoff (D.C. Bar No. 358419)
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
peter.isakoff@weil.com

Counsel for Sirius XM Radio Inc.

**PUBLIC VERSION**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    I.    SoundExchange Misconstrues the District Court's Primary Jurisdiction Referral ........................................................................................................... 4

    II.    The Judges' Conclusion Regarding Sirius XM's Discovery Conduct Was Not an Interpretation of the Judges' Regulations ...................................... 5

    III.    The Judges Lack Authority to Reach Binding Conclusions Regarding the Parties' Compliance with the Interpreted Regulations ........................... 8

    IV.    Sirius XM Should Be Allowed to Recalculate its Gross Revenues Using the Appropriate Methodology .......................................................................... 9

CONCLUSION ......................................................................................................................... 10

**PUBLIC VERSION**

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Auer v. Robbins,*
    519 U.S. 452 (1997) ............................................................................................................. 9

*SoundExchange, Inc. v. Sirius XM Radio Inc.,*
    65 F. Supp. 3d 150, 156 (D.D.C. 2014) ............................................................................ 4, 5

**Statutes**

17 U.S.C. § 114(f)(1)(B) ............................................................................................................ 8, 9

17 U.S.C. § 803(d) ......................................................................................................................... 9

**Other Authorities**

37 C.F.R. § 382.11(3)(vi)(D) ......................................................................................................... 3

PUBLIC VERSION

Sirius XM Radio Inc. ("Sirius XM") respectfully submits this reply memorandum of law in response to SoundExchange's April 24, 2017 Brief (the "SoundExchange Brief") answering the Copyright Royalty Judges' (the "Judges") request for briefing on five unresolved issues relating to the Judges' January 10, 2017 Ruling (the "Ruling").

## INTRODUCTION

The parties' respective briefing makes clear that there appear to be many points of agreement, including, most significantly, that (1) the Judges have broad authority under the Copyright Act to interpret their own regulations, and (2) on this primary jurisdiction referral, the Judges were empowered to conclude, as they did, that Sirius XM could exclude revenues attributable to pre-1972 sound recordings from "Gross Revenues," and to examine the reasonableness of the methodologies Sirius XM used to calculate those revenues.[1]

The parties also agree that:

- The Judges' proffered distinction between "interpretation" and "application" is ultimately not particularly helpful here, because the Judges' continuing jurisdiction allows them to both interpret regulations and offer the parties practical guidance as to how to implement the regulations.[2]

- The Judges assessment of Sirius XM's exclusion methodologies was properly an exercise of interpretation of the 2008 Regulations, not a pure application of the regulations.[3]

---

[1] Sirius XM's April 24, 2017 Brief will be referred to as the "Sirius XM Brief."

[2] *See, e.g.*, SoundExchange Brief at 6 (explaining that "it makes little sense to distinguish between" interpretations and applications "for purposes of construing the scope of the Judges' authority" because pure interpretation of the Gross Revenue exclusion regulation would not provide "meaningful guidance for parties seeking to determine whether a particular exclusion is lawful or unlawful, absent discussion of how those standards apply in particular settings"); Sirius XM Brief at 7 (acknowledging that "[t]he distinction between 'interpretation' and 'application' is not a bright-line rule that separates what the Judges have the authority to do from what they do not").

[3] *See, e.g.*, SoundExchange Brief at 5–6 (arguing that the Judges' holdings in section (V)(C)(1)(B) of the Ruling are "properly characterized as interpretations of the Judges'

- The Judges acted within their jurisdiction—and the scope of the District Court's primary jurisdiction referral—in concluding that Sirius XM's ▮▮▮▮▮ methodology for calculating pre-'72 revenue (between November 2011 and December 2012) was unreasonable.[4]

- The Judges lack enforcement jurisdiction and, therefore, can neither order compliance nor fix penalties.[5]

- The Judges' question number three (*i.e.*, whether the Judges have jurisdiction under the Copyright Act to apply their interpretations of the regulations to the facts in the record and reach binding conclusions regarding the interpreted regulations) does not present a novel question requiring referral to the Register for consideration.[6]

---

regulations" because, even though they relate to "a particular factual scenario," they "give[] meaning to the regulation"); Sirius XM Brief at 8–9 (arguing that "the Judges' assessment of the reasonableness of Sirius XM's methodologies" clarified "the meaning and significance of the Regulations by explaining what they required" and that, "even though the Judges' assessment . . . required the examination of a limited record," it was nevertheless "more akin to an interpretation of the Regulations" than an application).

[4] *See, e.g.*, Sound Exchange Brief at 9 (acknowledging that the Judges' jurisdiction encompasses "applications of regulatory interpretations, not just pure interpretative questions divorced from facts," including deciding "whether *Sirius XM's approaches were permissible* under the regulations"); *id.* at 7–8 (recognizing that, in referring this matter to the Judges, the District Court "framed the questions for referral in terms of whether Sirius XM's approaches to its Gross Revenues calculations were permissible"); Sirius XM Brief at 12–13 (arguing that the Judges' adverse conclusion that Sirius XM's ▮▮▮▮▮ was unreasonable" was "entirely in line with the Judges' power to consider whether Sirius XM applied the 2008 Regulations *in the manner* intended by the CRJs, and was, therefore, a permissible application of the Judges' interpretation of those regulations" (internal quotation marks omitted)); *id.* at 10 (recognizing that, in its referral, the District Court "sought the Judges' expert opinions on the permissibility of Sirius XM's approach to the exclusions" (internal quotation marks omitted)).

[5] *See, e.g.*, SoundExchange Brief at 10 ("Nothing in the Copyright Act authorizes the Judges to order a licensee to remit funds to compensate for past underpayments, or to penalize a licensee for failing to repay underpaid amounts."); Sirius XM Brief at 12 ("The Copyright Act did not confer any enforcement authority on the Judges. Unlike other federal agencies, the Judges can neither compel compliance with CRB regulations nor fix penalties for proven violations." (footnotes omitted)).

[6] *See, e.g.*, SoundExchange Brief at 11 ("Referral under § 801(f)(1)(B) is not appropriate because the question here—concerning the Judges' authority to apply their interpretations—is not novel. To the contrary, it was resolved in the Register's 2015 ruling."); Sirius XM Brief at 14 ("[R]eferral is unnecessary because the question at issue here . . . is not novel. The Register

2

- Neither the doctrine of primary jurisdiction nor the Copyright Act permits the Judges to *recommend* applications of their interpretations to the District Court.[7]

The parties significantly disagree as to the appropriateness of the Judges' conclusion that Sirius XM's production of representative sample data during the course of the limited discovery on this primary jurisdiction referral rendered an otherwise reasonable and acceptable estimation method during the 2007–2009 period non-transparent and unreasonable. In so concluding, the Judges both exceeded their authority and misapprehended the intentionally limited nature of the discovery record and the correspondingly limited scope of the ruling sought by the parties. Accordingly, the Judges should reissue the Ruling deleting all references to Sirius XM's discovery disclosures and any suggestion that they had any impact on the transparency of Sirius XM's calculation of gross revenue exclusions during the period at issue.[8]

## ARGUMENT

SoundExchange and Sirius XM largely agree on many of the issues specified in the Judges' March 9, 2017 Order soliciting briefing. As a result, Sirius XM here addresses only the material points of apparent difference, *i.e.*, (i) whether the District Court's referral included

---

already answered it in her Memorandum Opinion on the scope of the Judges' continuing jurisdiction.").

[7] *See, e.g.*, SoundExchange Brief at 14 ("No provision of the Copyright Act . . . authorizes the Judges to opine on the application of their regulations, even in nonbinding fashion, outside the compass of their continuing jurisdiction over rate determinations. The district court's invocation of the doctrine of primary jurisdiction does not change this result."); Sirius XM Brief at 15 (explaining that the "doctrine of primary jurisdiction does not permit the Judges to apply interpretations to facts in the record or, for that matter, to recommend particular applications to the District Court" and that "[n]othing in the text of section 803(c)(4) suggests that the Judges may make recommendations to the District Court regarding a party's compliance").

[8] As detailed in the Sirius XM Brief at 16–19, Sirius XM also requests that the Judges reconsider the portion of the Ruling holding that Sirius XM's premier package was not offered for a "separate charge" and, accordingly, fell outside 37 C.F.R. § 382.11(3)(vi)(D)'s exclusion.

3

questions of specific application of the Regulations to determine compliance on a month-by-month basis through the relevant period; (ii) whether the Judges had authority to conclude—or correctly concluded—that Sirius XM's 2015 and 2016 discovery conduct retroactively rendered its use of its otherwise acceptable ▬▬▬ method unreasonable, non-transparent, or non-compliant for certain months years prior to this dispute; (iii) whether the Judges can reach binding conclusions regarding the parties' compliance with the Regulations; and (iv) whether the Judges had any jurisdiction to rule—or even purported to rule—that, in litigating any issues of damages before the District Court, Sirius XM can or cannot cure any non-compliance by providing any additional data and/or recalculating its October 2011–December 2012 revenue exclusions using the approved ▬▬▬ method.

## I.    SoundExchange Misconstrues the District Court's Primary Jurisdiction Referral

Sirius XM agrees with SoundExchange that the District Court's referral sought the Judges' opinions on the permissibility of Sirius XM's overall approaches to the exclusions. These issues, as SoundExchange acknowledged in response to the Judges' question number one, are "properly characterized" as questions relating to "interpretations of the Judges' regulation." SoundExchange Brief at 6, 7. Sirius XM shares that view. Yet, SoundExchange, confusingly, appears to contradict itself in its response to the Judges' question number two, when it argues that the same question—*i.e.*, "whether Sirius XM's approaches to its Gross Revenues calculations were permissible" under the Regulations—is a question of the "application of the regulations," not an interpretation. SoundExchange Brief at 7–8.

Not only is SoundExchange's position internally inconsistent, but it is also at odds with the District Court's clear recognition that the relevant question—"whether Sirius XM's approach was improper [under the Regulations]"—"is an open question of *interpretation* and policy." *SoundExchange, Inc. v. Sirius XM Radio Inc.*, 65 F. Supp. 3d 150, 156 (D.D.C. 2014) (emphasis

4

added). The District Court did not intend for the Judges to conduct a full-blown application of the Regulations to adjudicate Sirius XM's month-by-month compliance. As Sirius XM explained (*see* Sirius XM Brief at 8, 11–13), the primary jurisdiction referral contemplated that the Judges would review Sirius XM's general approaches and provide interpretive guidance as to the meaning of the Regulations and the permissibility of Sirius XM's approaches. And these tasks, as SoundExchange elsewhere argued, are questions relating to the interpretation of the Regulations, not their application, because their answers would "give[] meaning to the regulation." SoundExchange Brief at 6; *see id.* at 7. The specific application, including issues as to Sirius XM's month-by-month compliance with the Regulations as interpreted, are expressly reserved for the District Court, and are beyond the Judges' jurisdiction. *See* 65 F. Supp. 3d at 156–57 (directing SoundExchange to seek damages in the District Court "[i]f the CRB judges Sirius XM's gross revenue calculations to have been improper").

## II. The Judges' Conclusion Regarding Sirius XM's Discovery Conduct Was Not an Interpretation of the Judges' Regulations

SoundExchange claims—without explanation—that the Judges' conclusion that Sirius XM's approach to discovery on the primary jurisdiction referral rendered its earlier use of a reasonable estimation methodology non-transparent and unreasonable was an interpretation of the Judges' regulations. *See* SoundExchange Brief at 5–6. But this fails SoundExchange's own test for what counts as an "interpretation": SoundExchange does not explain how this holding gave "meaning to the regulation." *Id.* at 6. Nor could it. The Judges' holding that Sirius XM's *methodology* was not transparent because, years after the fact, it chose, without protest, to provide data only for sample months in creating the necessary limited discovery record on this primary jurisdiction referral, in no way elucidates the meaning, impact, or import of the Regulations. The meaning of the Regulations, and whether Sirius XM's general approach and

5

methodology for revenue exclusions comported with the Regulations, does not depend on whether, years later, Sirius XM produced data for sample months, every month, or something in between. Of course, whether Sirius XM properly calculated the revenue exclusion for any given month will require examining a particular month's actual calculation, but that type of specific application of the Regulations and the adjudication of Sirius XM's compliance therewith on a month-by-month basis is reserved exclusively for the District Court. The meaning of the Regulations and the permissibility of Sirius XM's general approach—the interpretive questions subject to the referral—remain the same regardless of the number of months of data Sirius XM produced in limited discovery here.

Nonetheless, SoundExchange attempts to reframe the Judges' conclusion on this issue as an interpretation by arguing that the Judges held that "in order for Sirius XM's exclusions to be reasonable, they must be transparent—which means, at a minimum, that they must be disclosed in litigation." SoundExchange Brief at 6. This "disclosure in litigation" requirement is nowhere to be found in the Ruling, the Regulations or anywhere else. It also makes little sense. Sirius XM *was* completely transparent about its revenue exclusion methodology and approach. As the Judges recognized, SoundExchange did not challenge Sirius XM's showing of the methodologies it used to calculate the revenue exclusion. *See* Ruling at 15–16. Producing sample months to illustrate that methodology did not render Sirius XM's approach any less transparent. And Sound Exchange neither contended otherwise nor moved to compel data from the other months.

SoundExchange's "disclosure in litigation" test for the reasonableness of a revenue exclusion is also illogical. The question referred from the District Court is whether Sirius XM's calculation for a given month was reasonable at the time it was calculated, not whether it was transparently disclosed in litigation six or seven years later. If "disclosure in litigation" were the

6

test for reasonableness of a calculation methodology, Sirius XM would never be permitted to exclude excludable revenue from its contemporaneous monthly calculations and royalty reports, but would be obliged to await litigation, were it ever to occur, before it could properly exclude otherwise excludable revenue from its royalty calculations.

Moreover, as explained in detail in the Sirius XM Brief, the Judges' conclusion on this issue is, respectfully, flawed for two reasons. First, Sirius XM's 2015 and 2016 discovery conduct simply could not have retroactively rendered its application of any estimation method during the 2007–2009 period unreasonable. Because the Judges concluded that the particular method Sirius XM used during this time period was "a reasonable way" to estimate excludable pre-'72 revenue, Ruling at 15, Sirius XM's approach to the exclusions was permissible and appropriate at the time the exclusions were taken, which is what necessarily matters for these purposes. Second, in concluding that Sirius XM's discovery conduct was not transparent, the Judges overlooked several incontestable facts, including that (i) Sirius XM fully complied with SoundExchange's audits of Sirius XM's royalty accounting during the relevant period (which themselves accepted data from selected sample months as representative of Sirius XM's calculations throughout the period); (ii) the parties engaged in *limited* discovery on this primary jurisdiction referral, which discovery was specifically aimed at supplying the Judges with only that illustrative data necessary for the Judges to answer the questions referred; (iii) Sirius XM openly acknowledged that it produced only a sampling of data for the relevant time period; and (iv) SoundExchange made no effort to further pursue its request for month-by-month information, thereby effectively accepting that a more detailed production was unnecessary for purposes of this primary jurisdiction referral. Given these facts, it can hardly be said that there

7

was any lack of transparency on Sirius XM's part; much less that any such lack of transparency retroactively rendered Sirius XM's 2007–2009 exclusion calculations improper.

### III. The Judges Lack Authority to Reach Binding Conclusions Regarding the Parties' Compliance with the Interpreted Regulations

SoundExchange agrees (*see* SoundExchange Brief at 10) that the Judges do not have the power to enforce the Regulations, and they therefore do not have the power to reach binding conclusions regarding the parties' *compliance* with the Regulations. As we have explained above and in our initial briefing, adjudicating whether Sirius XM complied with the Regulations by properly calculating exclusions from Gross Revenues on a month-by-month basis is a question the District Court reserved for itself, and a question outside of the Judges' continuing jurisdiction and the primary jurisdiction referral. Lacking enforcement authority, the Judges necessarily also lack the power to issue binding conclusions as to the same subject matter. SoundExchange offers no statutory authority to support the opposite view.

Instead, SoundExchange seizes on language in 17 U.S.C. § 114(f)(1)(B), which provides that the "schedule of reasonable rates and terms" that the Judges set in a rate proceeding will "be binding on all copyright owners of sound recordings and entities performing sound recordings affected by this paragraph." *See* SoundExchange Brief at 10. But this language does not help SoundExchange show that the Judges may issue binding conclusions as to Sirius XM's *compliance* with the Regulations. For one thing, it relates only to the Judges' determinations of the "reasonable rates and terms" of the statutory license; it says nothing about conclusions regarding the parties' compliance therewith. And the fact that this is an exercise of the Judges' continuing jurisdiction, does not *increase* the Judges' authority to issue any such binding conclusions. Section 803(c)(4), which grants the Judges the authority to "modify the terms" of the Judges' rate determination, contains no language authorizing any conclusions about

8

Case 1:24-cv-05491-NRB   Document 70-6   Filed 11/26/24   Page 13 of 15

PUBLIC VERSION

compliance with the Regulations—nor, for that matter, does it contain any language suggesting any determinations are "binding" on anyone.

Moreover, Section 114 does not provide (nor could it) that the Judges' determinations are binding on the District Court. The Judges' conclusions cannot bind the District Court, which is empowered to reject conclusions or interpretations that are "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). The Copyright Act specifically makes clear that determinations under Judges' § 114(f)(1)(B) authority are subject to oversight by the courts. *See* 17 U.S.C. § 803(d). Thus, the Judges' holdings on this primary jurisdiction referral cannot bind the District Court.[9]

## IV. Sirius XM Should Be Allowed to Recalculate its Gross Revenues Using the Appropriate Methodology

SoundExchange's arguments regarding the binding nature of the Judges' rulings hint that it may argue that Sirius XM should not be allowed to cure any non-compliant calculations in proceedings before the District Court. But that cannot be the case, and any issues of cure are plainly beyond the Judges' authority on this primary jurisdiction referral. Because the Judges lack enforcement authority, they necessarily likewise lack authority to determine the consequences of any non-compliance, including issues as to cure, mitigation and the causation and measure of any damages in the event of a finding of non-compliance. We do not believe that the Ruling purported to address such questions. To the extent it did, it exceeded the Judges' authority. We believe that the Ruling is best understood as having construed the Regulations and otherwise addressed the overall reasonableness of the two methodologies that Sirius XM used in estimating excludable revenue, leaving all other issues, if any, to the District Court.

---

[9] SoundExchange suggests that the Judges' conclusions may nevertheless bind the *parties*, SoundExchange Brief at 10. That suggestion is meaningless. Any liability and damages questions have been reserved for and will be determined by the District Court.

If and when this case returns to the District Court for a calculation of damages owing (if any), Sirius XM will produce all relevant data and will recalculate its pre-'72 revenue for the October 2011–December 2012 period using the approved ███████ method. Not only is this the result originally anticipated by the District Court, it is also the fairest result, as it will ensure that Sirius XM is not arbitrarily compelled to overpay SoundExchange by including legally excludable revenue in the royalty calculation.

## CONCLUSION

For the foregoing reasons and those stated in the Sirius XM brief, the Judges should re-issue the Ruling, deleting the portions highlighted on Exhibit A to the Sirius XM Brief, and recasting that portion of the Ruling concerning Sirius XM's premier upcharge.

Dated: May 15, 2017

Respectfully submitted,

*/s/ Peter D. Isakoff, Jr.*

R. Bruce Rich (N.Y. Bar No. 1304534)
Todd Larson (N.Y. Bar No. 4358438)
Adam B. Banks (N.Y. Bar No. 4756060)
Erin M. James (N.Y. Bar No. 5360037)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
bruce.rich@weil.com
todd.larson@weil.com
adam.banks@weil.com
erin.james@weil.com

Peter D. Isakoff (D.C. Bar No. 358419)
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
peter.isakoff@weil.com

*Counsel for Sirius XM Radio Inc.*

## CERTIFICATE OF SERVICE

I, Adam B. Banks, hereby certify that a copy of the foregoing memorandum of law was sent via electronic mail and overnight delivery on this 15th day of May 2017, to the following:

> David Handzo
> Joshua Segal
> Previn Warren
> Jenner & Block LLP
> 1099 New York Avenue, N.W., Suite 900
> Washington, DC 20001
> dhandzo@jenner.com
> jsegal@jenner.com
> pwarren@jenner.com
>
> C. Colin Rushing
> Brieanne A. Elpert
> SoundExchange Inc.
> 1121 14th Street, N.W., Suite 700
> Washington, DC 20005
> crushing@soundexchange.com
> belpert@soundexchange.com

_____
Adam B. Banks

11