**O+Z Oppenheim + Zebrak, LLP**
WASHINGTON – NEW YORK

Scott A. Zebrak
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.480-2999
scott@oandzlaw.com

November 26, 2024

**BY ECF**

Honorable Naomi Reice Buchwald
United States District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *SoundExchange, Inc. v. Sirius XM Radio Inc.*, 1:24-cv-05491-NRB

Dear Judge Buchwald:

  We represent Plaintiff SoundExchange, Inc. Pursuant to Rule 2.E.1 of Your Honor's Individual Practices, we submit this letter outlining the arguments in SoundExchange's Opposition (Dkt. 70 ("Opp.")) to Sirius XM Radio Inc.'s Motion for Judgment on the Pleadings, Dkt. 62.

  In Section 114 of the Copyright Act, Congress created a statutory license whereby digital music services like Sirius may transmit copyrighted sound recordings so long as they pay royalties to artists and copyright owners at a rate set by the Copyright Royalty Board ("CRB"). 17 U.S.C. § 114. Congress left no doubt that the royalty is mandatory; the statute expressly states that services have a "binding" obligation to pay and that artists and copyright owners are "entitled" to payment. Nor did Congress leave any doubt about whom it was empowering to collect and enforce the royalty obligation: the statute expressly charges a collective (SoundExchange) with collecting and distributing the royalties, subject to a deduction of its costs for "enforcement" of the royalty obligation. And Congress did not provide any other remedy to recover underpayment.

  Sirius now asks this Court to deprive SoundExchange of the only enforcement authority Congress provided. But Section 114's distinctive language *expressly* presupposes SoundExchange will "enforce[]" Sirius's royalty obligation. And the Second Circuit has squarely held that where Congress uses language that presupposes enforcement, such language is "*effectively equivalent* to providing an express cause of action." *Oxford Univ. Bank v. Lansuppe Feeder, LLC*, 933 F.3d 99, 105 (2d Cir. 2019) (emphasis added). Sirius would transform Section 114's "binding," "enforce[able]" royalty obligation into a mere suggestion that Sirius should pay royalties to the extent it wishes. This Court should reject Sirius's atextual and illogical reading of the statute.

**I. Congress intended to create a private cause of action to recover underpaid royalties.**

  The Second Circuit employs a well-established three-part test to determine whether Congress intended to provide a private right of action: (1) whether the "provision[] allegedly violated" contains "rights-creating language" focused on the "individuals protected" rather than the "regulated entities"; (2) whether Congress "provided an alternate means of enforcing the relevant provisions"; and (3) whether "Congress expressly provided a cause of action" elsewhere in the statute. *Oxford Univ. Bank*, 933 F.3d at 104–05. Section 114 satisfies this test in spades.

  *First*, Section 114's distinctive licensing and enforcement provisions could hardly employ clearer "rights-creating language." The statute contains a specific formula for paying statutory royalties to artists and copyright owners. 17 U.S.C. § 114(g)(2). And it repeatedly states that artists and copyright owners are "entitled" to receive payments. *Id*. § 114(g)(3); *see also id*. § 114(f)(4)(A), (g)(5)(A). Congress was also clear in bestowing on SoundExchange, as the

Hon. Naomi Rice Buchwald
November 26, 2024

designated "collective," the right to collect and distribute royalties on behalf of artists and copyright owners. *See* 17 U.S.C. § 114(g)(2)–(3).

Section 114 also expressly envisions a remedy: it states that SoundExchange can deduct costs for "enforcement of rights," which necessarily presupposes that SoundExchange may enforce those rights. Such language is "effectively equivalent to providing an express cause of action." *Oxford Univ. Bank,* 933 F.3d at 105. "Enforcement" means forcing compliance with a law. *Enforce*, BLACK'S LAW DICTIONARY (7th ed. 1999). And enforcement of a legal obligation encompasses bringing a lawsuit. *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 632 F. Supp. 3d 517, 531–32 (S.D.N.Y. 2022) (contractual term requiring a trustee to "enforce [a buyer]'s obligation under the Purchase Agreement" included a duty to bring suit). Congress likewise provided that the rates the CRB sets shall be "shall . . . be binding" on music services. 17 U.S.C. § 114(f)(1)(B). The CRB's rates are "binding" only if SoundExchange can sue to "enforce" them.

Faced with clear statutory language, Sirius disingenuously claims that SoundExchange can "enforce" Section 114 by "actively monitor[ing]," "negotiat[ing]," "investigating," and "audit[ing]." Mot. 15. But monitoring, negotiating, investigating, and auditing enforce nothing without a mechanism to compel compliance. Sirius's "enforcement" has no force at all.

That Congress expressly envisioned SoundExchange would sue to recover unpaid royalties is hardly surprising considering that Section 114 acts as a compulsory contract between royalty recipients and service providers. It is natural and necessary that the parties to that contract be able to sue for breach. "[W]here a common-law principle is well established . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). Having created a statutory license, Congress intended that SoundExchange could sue for breach as provided by common law.

Practice under the statute further confirms Congress's remedial language. Music services, like Sirius, have always operated on the understanding that SoundExchange can bring underpayment suits. In fact, in addition to settling the parties' prior litigation by paying $150 million in recognition of the existence of a right of action, Sirius itself has expressly acknowledged that SoundExchange has a right to sue for underpayments. Opp. 14. And courts have shared in this understanding, including in a case involving Sirius. *SoundExchange, Inc. v. Sirius XM Radio Inc.*, 65 F. Supp. 3d 150, 156–57 (D.D.C. 2014) ("SoundExchange can seek damages in this court" to the extent that "Sirius XM's gross revenue calculations . . . have been improper."). This unbroken line of authority provides strong evidence that Congress intended to create a right of action.

*Second*, Congress did not provide any other means to recover an underpayment. As Sirius has acknowledged, and as the CRB has held, the CRB lacks jurisdiction to resolve underpayment disputes. Its authority with respect to Section 114 is limited to "mak[ing] determinations and adjustments of reasonable terms and rates of royalty payments." 17 U.S.C. § 801(b)(1). This case has nothing to do with setting the appropriate terms and rates of royalty payments; SoundExchange seeks to be paid according to rates set by the CRB years ago.

Likewise, a copyright infringement suit would provide no relief to large classes of Section 114 beneficiaries and would exclude large classes of Section 114 royalty-generating works. Congress did not intend a remedy for enforcing Section 114 that covers only a subset of royalty recipients for a subset of works. And courts have recognized implied rights of action in the

2

Hon. Naomi Rice Buchwald
November 26, 2024

Copyright Act notwithstanding the express cause of action for infringement. *See Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1118 (9th Cir. 2015)

Sirius identifies no other remedy. While Sirius spends several pages of its brief discussing ostensibly "alternative methods of enforcement," Mot. 13–17, its references to toothless audits, negotiations, monitoring, and the like, *enforce* nothing. The lack of an alternate enforcement mechanism distinguishes this case from many of the cases Sirius cites that reject an implied cause of action in a regulatory or criminal statute that provides for enforcement by a government entity.

***Third***, the express right of action in Section 115 does not indicate that Congress intended the provision in question to be unenforceable. The cause of action Sirius identifies in Section 115 narrowly applies to recovery of administrative costs (not royalties) from those operating outside of the statutory license. 17 U.S.C. § 115(d)(6)(C). Congress's decision to spell out that cause of action merely reflects how unusual that kind of cost recovery is. When it comes to the more typical royalty payments for those covered by the statutory license, Section 115 presupposes that a collective has the right to sue for underpayment, just like Section 114, and it uses the same "enforcement of rights" language in doing so. 17 U.S.C. § 115(d)(3)(C)(i)(VIII), (d)(3)(G)(ii), (e)(6)(A)(v). In addition, Section 115 was created many years after Section 114. It does not bear on the intent of the Congress that enacted Section 114, much less nullify its enforcement language.

## II.   *Loper* does not counsel a different result.

The Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) has no application here. *Loper* held that courts should not defer to an agency's "permissible" interpretation of any ambiguities in its governing statute nor any agency attempt to fill a statutory "gap." 144 S. Ct. at 2266. But no agency action or interpretation of statutory authority is at issue here. And SoundExchange's cause of action rests not on a gap in the statute, but on the statute's express presumption—using the kind of language that the Second Circuit has held is the "effective[] equivalent" of a private right action. *Oxford Univ. Bank*, 933 F.3d at 105.

## III.   SoundExchange may bring suit on behalf of royalty recipients.

Even if the right of enforcement belongs only to artists and copyright owners, SoundExchange meets all three elements for associational standing. *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Its constituents—royalty recipients—have suffered a classic pocketbook injury traceable to Sirius's underpayment of royalties and redressable by payment of damages and injunctive relief. Rectifying Sirius's underpayment is central to SoundExchange's statutorily designated purpose of collecting and distributing royalties, 17 U.S.C. § 114(g)(2), and collective enforcement of the aggregate underpayment requires no involvement by any royalty recipient. Under *Hunt*, SoundExchange is fully entitled to bring a claim on behalf of the royalty recipients whose interests it serves. *See* 432 U.S. at 343–45.

*   *   *

Sirius's position that it is immune to suit when it underpays the statutory license fees it owes does not withstand scrutiny. The text, structure, and context of Section 114 overwhelmingly suggest an implied cause of action. This Court should deny Sirius's motion. Plaintiff requests oral argument.

3

Hon. Naomi Rice Buchwald
November 26, 2024

                    Respectfully Submitted,

                    /s/ *Scott A. Zebrak*
                    Scott A. Zebrak