# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

SOUNDEXCHANGE, INC.,

      *Plaintiff*,

v.

SIRIUS XM RADIO INC.,

      *Defendant*.

Case No. 1:24-cv-05491-NRB

Hon. Naomi Reice Buchwald

## DEFENDANT SIRIUS XM RADIO LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

Todd Larson
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
Telephone: (212) 310-8238
Facsimile: (212) 310-8007
Todd.Larson@weil.com

Andrew S. Tulumello (admitted *pro hac vice*)
Crystal L. Weeks (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7100
Facsimile: (202) 857-0940
Drew.Tulumello@weil.com
Crystal.Weeks@weil.com

*Counsel for Defendant Sirius XM Radio LLC*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

    I.      Section 114 Creates Neither a Right Nor a Remedy for SoundExchange ................... 2

    II.     Congress Allowed For Alternative Mechanisms of Enforcement ............................... 9

    III.    Congress Withheld a Right of Action in Section 114 ................................................ 10

    IV.    Achieving a Better Policy Outcome is a Task for Congress, Not This Court ............ 13

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval,*
532 U.S. 275 (2001)................................................................................................3, 12, 13

*Armstrong v. Exceptional Child Ctr., Inc.,*
575 U.S. 320 (2015)..........................................................................................................2, 4, 7

*Beck Chevrolet Co. v. Gen. Motors LLC,*
787 F.3d 663 (2d Cir. 2015)................................................................................................7

*Bellikoff v. Eaton Vance Corp.,*
481 F.3d 110 (2d Cir. 2007)................................................................................................9

*Cannon v. Univ. of Chi.,*
441 U.S. 677 (1979)................................................................................................2

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
511 U.S. 164 (1994)................................................................................................2

*Crooks v. Harrelson,*
282 U.S. 55 (1930)................................................................................................14

*Diagnostic Affiliates of Ne. Hou, LLC v. Aetna, Inc.,*
654 F. Supp. 3d 595 (S.D. Tex. 2023)................................................................................................10

*Durgom v. Janowiak,*
87 Cal. Rptr. 2d 619 (Cal. Ct. App. 1999)................................................................................................9

*Effects Assocs., Inc. v. Cohen,*
908 F.2d 555 (9th Cir. 1990)................................................................................................9

*FS Credit Opps. Corp. v. Saba Cap. Master Fund, Ltd.,*
No. 24-345, 2024 WL 4349951 (Sept. 24, 2024)................................................................................................6

*Gonzaga Univ. v. Doe,*
536 U.S. 273 (2002)................................................................................................1, 2, 3, 7

*Graham v. James,*
144 F.3d 229 (2d Cir. 1998)................................................................................................9

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
530 U.S. 1 (2000)................................................................................................15

*In re Hokulani Square, Inc.*,
    776 F.3d 1083 (9th Cir. 2015) .........................................................................14

*Hong v. U.S. Sec. & Exch. Comm'n*,
    41 F.4th 83 (2d Cir. 2022) ................................................................................5

*Johnson v. Interstate Mgmt. Co*,
    849 F.3d 1093 (D.C. Cir. 2017) .........................................................................8

*King v. Burwell*,
    576 U.S. 473 (2015) .........................................................................................15

*Ledbetter v. Goodyear Tire & Rubber Co.*,
    550 U.S. 618 (2007) .........................................................................................15

*Marie v. SoundExchange*,
    16-cv-02329 (N.D. Tex. Aug. 11, 2016)...........................................................14

*Moya v. U.S. Dep't of Homeland Sec.*,
    975 F.3d 120 (2d Cir. 2020).............................................................................10

*Murphy Med. Assocs., LLC v. Yale Univ.*,
    120 F.4th 1107 (2d Cir. 2024) .......................................................................1, 3

*Nestlé USA, Inc. v. Doe*,
    593 U.S. 628 (2021) .........................................................................................15

*N.Y. State Citizens' Coal. for Children v. Poole*,
    922 F.3d 69, 81 (2d Cir. 2019)...........................................................................7

*N.Y. State Citizens' Coal. for Children v. Poole*,
    935 F.3d 56, 58 (2d Cir. 2019)...........................................................................7

*Oklahoma v. Castro-Huerta*,
    597 U.S. 629 (2022) ...........................................................................................9

*Olmsted v. Pruco Life Ins. Co. of N.J.*,
    283 F.3d 429 (2d Cir. 2002)...........................................................2, 10, 12, 13

*Oxford Univ. Bank v. Lansuppe Feeder, LLC*,
    933 F.3d 99 (2d Cir. 2019)..............................................................................6, 7

*Pavelic & LeFlore v. Marvel Enter. Grp.*,
    493 U.S. 120 (1989) .........................................................................................15

*Peer Int'l Corp. v. Pausa Recs., Inc.*,
    909 F.2d 1332 (9th Cir. 1990) ...........................................................................9

*Peterson v. Bank Markazi*,
    121 F.4th 983 (2d Cir. 2024) ............................................................1

*Ray Charles Found. v. Robinson*,
    795 F.3d 1109 (9th Cir. 2015) .......................................................13

*Republic of Iraq v. ABB AG*,
    768 F.3d 145 (2d Cir. 2014) ............................................................1

*Sackett v. Env't Prot. Agency*,
    598 U.S. 651 (2023) ........................................................................4

*SoundExchange, Inc. v. Muzak LLC*,
    854 F.3d 713 (D.C. Cir. 2017) ........................................................8

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979) ........................................................................15

*U.S. Naval Inst. v. Charter Commc'ns*,
    936 F.2d 692 (2d Cir. 1991) ............................................................9

*Wards Cove Packing Co. v. Atonio*,
    490 U.S. 642 (1989) ......................................................................15

*Xerox Corp. v. Apple Computer, Inc.*,
    734 F. Supp. 1542 (N.D. Cal. 1990) .............................................13

*Zurich Am. Ins. Co. v. Felipe Grimberg Fine Art*,
    324 F. App'x 117 (2d Cir. 2009) ....................................................7

**Statutes**

17 U.S.C. § 106(6) ..............................................................................2

17 U.S.C. §§ 501–510 .......................................................................13

17 U.S.C. § 501(f)(2) ..........................................................................6

17 U.S.C. § 502(b) ............................................................................6,

17 U.S.C. § 603(b)(1) .........................................................................6

17 U.S.C. § 112 .................................................................................12

17 U.S.C. § 114 .......................................................................... *passim*

17 U.S.C. § 115 ...................................................................10, 11, 12

Copyright Act of 1976, Pub. L. No. 94-553, 90 Stat. 2561, 2562
    (codified at 17 U.S.C. § 115(c)(4)) .................................................................11

**Other Authorities**

2 NIMMER ON COPYRIGHT § 8.22 (2024) ................................................................2

3 NIMMER ON COPYRIGHT § 10.15 (2024) ..............................................................9

18B Fed. Prac. & Proc. Juris. § 4477 (3d ed. 2024) ...............................................8

Antonin Scalia & Bryan A. Garner, *Reading Law* (2012) .....................................14

*Determination of Reasonable Rates and Terms for the Digital Performance of
    Sound Recordings and Ephemeral Recordings*,
    67 Fed. Reg. 45,240 (July 8, 2002) ...............................................................8, 9

*Determination of Rates and Terms for Digital Performance of Sound Recordings
    and Making of Ephemeral Copies To Facilitate Those Performances* (*Web V*),
    86 Fed. Reg. 59452 (Oct. 27, 2021) ..................................................................5

Fed. R. Civ. P. 12(h)(2) ...........................................................................................8

H.R. Rep. No. 115-651 (2018) .................................................................................9

U.S. Copyright Off. *Copyright and the Music Marketplace* (Feb. 2015) ..............12

WEBSTER'S THIRD NEW INT'L DICTIONARY 751 (1993) ..........................................4

**INTRODUCTION**

SoundExchange and its *Amici* struggle for a combined forty pages to explain why Congress did not do in Section 114 of the Copyright Act what Congress knows very well how to do: create a private right of action. SoundExchange admits Section 114 does not provide an express right of action. To gin up an implied right, SoundExchange distorts Second Circuit case law, relies on the outdated practice of "presupposing" a remedy, and whistles past the serious separation-of-powers concerns arising from judicial invention of private rights of action. Courts simply no longer indulge appeals to policy or the contorted approaches to statutory interpretation that SoundExchange asks this Court to embrace. In the modern era, implied rights of action are strongly disfavored, and Congressional intent to create a cause of action must be *unambiguous*. Because the claims here do not meet that extraordinarily strict standard, they should be dismissed with prejudice.

**ARGUMENT**

SoundExchange starts out on the wrong foot. It breezily says that "courts in this circuit and others *routinely* conclude that Congress intended to provide a right of action even where it did not say so expressly." Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for J. on the Pleadings, ECF No. 70 ("Opp'n"), at 7 (emphasis added). In fact, just the opposite is true. In the short time since Sirius XM filed its motion, the Second Circuit has twice declined to recognize an implied right of action in two different statutes. *See Peterson v. Bank Markazi*, 121 F.4th 983, 1003 (2d Cir. 2024) ("Implied rights of action are 'disfavored.'" (citation omitted)); *Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1111–13 (2d Cir. 2024) (*per curiam*) (finding no right of action despite "rights-creating language" in statute). Far from "routine," courts "*rarely* impute to Congress an intent to create a private right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 n.3 (2002) (emphasis added); *see also Republic of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014)

(explaining that statutes "rarely" "create a private right of action . . . by implication"). "Rarely" is not "routinely," as SoundExchange suggests.

SoundExchange also mischaracterizes the "three-part test" it says "determine[s] whether Congress intended to provide a private right of action." Opp'n at 7. According to SoundExchange, if the three-part test is satisfied, this Court must imply the cause of action. Opp'n at 2. That puts the burden on the wrong party. The test is merely a tool to help ascertain what is always the ultimate question: whether Congress "'unambiguously'" created a private right of action. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 332 (2015) (quoting *Gonzaga*, 536 U.S. at 274). And on that question, "the text of the statute controls." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173 (1994). Where, as here, the text does not provide such a right, there is a "strong presumption that Congress did *not* intend" to provide one. *Olmsted v. Pruco Life Ins. Co. of N.J.*, 283 F.3d 429, 433 (2d Cir. 2002) (emphasis added). The three statutory features SoundExchange points to accordingly must be so powerful and convincing that they overcome the strong presumption against implied rights. None comes remotely close here.

## I.    Section 114 Creates Neither a Right Nor a Remedy for SoundExchange

Section 114 does not create any rights for SoundExchange. "Rights-creating language" is language "explicitly conferr[ing] a right directly on a class of persons *that include[s] the plaintiff in [a] case*." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 690 n.13 (1979) (emphasis added). As its title indicates, Section 114 does not establish new rights but instead merely sets forth the "*[s]cope of exclusive rights*" elsewhere granted in the Act. Section 106(6) gives copyright owners the right of public performance via digital audio transmission, and Section 114 sets forth how statutory licensees pay for that right and how that payment gets divided up. *See generally* 2 NIMMER ON COPYRIGHT § 8.22 (2024). SoundExchange cites to various subsections of Section 114 to try to

manufacture additional rights, but none gives SoundExchange the right to sue Sirius XM for alleged underpayment of royalties.

1.  SoundExchange first focuses on the provision that specifies the "formula for paying statutory royalties to artists and copyright owners," and argues that it necessarily confers on it the "right to collect and distribute royalties on behalf of artists and copyright owners." Opp'n at 8 (citing § 114(g)(2)–(3)). But that provision doesn't grant any rights to SoundExchange at all. To the contrary, it *imposes* on SoundExchange a binding *obligation* to distribute royalties to various entities according to a specific formula, less certain reasonable administrative and legal costs it is entitled to "deduct from any of its receipts[] prior to [] distribution." § 114(g)(3). That is, it "focus[es] on the person regulated" (SoundExchange), "rather than the individuals protected," and thus does not evince any Congressional intent to "confer rights" on SoundExchange. *Alexander v. Sandoval*, 532 U.S. 275, 286, 289 (2001) (cleaned up). It does not grant SoundExchange any rights that are enforceable against Sirius XM, much less a cause of action to sue Sirius XM.

2.  SoundExchange next invokes the references to various entities' "entitlement" to royalty distributions, Opp'n at 8, and says they create "binding obligation[s]" on statutory licensees such as Sirius XM, *id.* at 10. That linguistic effort is also unpersuasive. Sirius XM does not dispute that "artists and copyright owners are 'entitled' to receive payments" from users of the statutory license. *Id.* (quoting § 114(g)(3)). And as set forth below, they have remedies available in the event they do not receive them. But *SoundExchange* cannot bring suit absent a private right of action.

The Supreme Court has made clear that "even where a statute is phrased in . . . explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent to create not just a private *right* but also a private *remedy*." *Gonzaga*, 536 U.S. at 284 (cleaned up); *see also Murphy Med. Assocs.*, 120 F.4th at 1111–13 (no implied

right despite "rights-creating language"). SoundExchange does not dispute that Section 114 does not provide an *express* remedy. Opp'n at 9. It argues instead that Section 114 "*presupposes* a remedy" through the subsection giving it the authority to deduct from its receipts the costs incurred in "the licensing and enforcement of rights . . . ." *Id.* (emphasis added) (quoting § 114(g)(3)(C)). The length SoundExchange goes to explain this strained interpretation of the statute is itself evidence that Congress did not intend to provide a right of action, or at least did not do so clearly. *See Armstrong*, 575 U.S. at 332 ("[A] private right of action under federal law . . . must be unambiguously conferred." (cleaned up)).

3.   SoundExchange places great weight on the word "enforcement." Wielding Black's law dictionary, SoundExchange says that it means "forcing compliance with the law," and notes that "enforcement of a legal obligation typically encompasses bringing a lawsuit." Opp'n at 9. But as the word "typically" indicates, a legal obligation can be enforced in many ways *other than* litigation. "Enforce" can also mean to "implement." WEBSTER'S THIRD NEW INT'L DICTIONARY 751 (1993) (listing "implement" as a synonym of "enforce" and defining it as "performance of such acts as are necessary to bring into actual effect or operation some agreed-on plan or measure"),[1] and that is precisely what SoundExchange does in serving as the designated middleman between Sirius XM and copyright owners. SoundExchange describes its mission in public filings to include "implement[ing] innovative, efficient, and trusted financial-tech and data management solutions for the global music marketplace" and "administer[ing]" the statutory licenses. IRS Form 990, SoundExchange (2020), Ex. A, at 30. This is the language of implementation, not litigation.

Even if Congress did intend for the word "enforcement" to encompass litigation expenses

---

[1] Courts may use synonyms to interpret statutory terms. *See, e.g.*, *Sackett v. Env't Prot. Agency*, 598 U.S. 651, 676 (2023) (crediting synonym of "adjacent").

as costs SoundExchange can deduct before making payments to copyright owners, SoundExchange is wrong that a cost deduction provision implies a right for SoundExchange to "*bring[]* a lawsuit." Opp'n at 9 (emphasis added). The phrase SoundExchange accuses Sirius XM of ignoring, *see id.* at 11, describes the "enforcement" costs as "including those [for] . . . participating in negotiations or arbitration proceedings," § 114(g)(3)(C). That Congress did not specify litigation is a clear statutory signal that it did not "presuppose" SoundExchange would be engaged in regular civil litigation.

Moreover, SoundExchange "participat[es]" in several enforcement activities for which it can deduct costs. SoundExchange can participate as a third party in litigation brought by copyright owners to enforce their rights under state common law. SoundExchange also participates in the administrative rate setting proceedings every five years. The year of the *Web V* proceeding, for instance, when the Copyright Royalty Board ("CRB") determined the rates for the digital performance of sound recordings for the period 2021-2025,[2] SoundExchange reported $5,029,850 in legal fees to Jenner & Block LLP. *See* Ex. A at 9. SoundExchange is thus no stranger to deducting the cost of participating in enforcement proceedings that do not involve affirmative litigation under a supposed private right of action found nowhere in Section 114.

In any event, "the plain meaning of a statute does not turn solely on dictionary definitions of the statute's component words; it also depends on the specific context in which that language is used, and the broader context of the statute as a whole." *Hong v. U.S. Sec. & Exch. Comm'n*, 41 F.4th 83, 95 (2d Cir. 2022) (cleaned up). As explained in Part III below, the structure of the Copyright Act, including its express provision of rights of action elsewhere, indicates Congress intentionally withheld a right of action in Section 114.

---

[2] *See Determination of Rates and Terms for Digital Performance of Sound Recordings and Making of Ephemeral Copies To Facilitate Those Performances* (*Web V*), 86 Fed. Reg. 59452 (Oct. 27, 2021).

4.  SoundExchange cites "dozen(s)" of examples in which "[t]he Copyright Act uses the word 'enforcement' . . . to mean litigation." Opp'n at 9 n.6. Tellingly, in each and every example listed in footnote 6, the word enforcement is accompanied by other, more pointed textual authority for a right of action. *See, e.g.*, 17 U.S.C. § 501(f)(2) (referring to a "civil action"); *id.* § 502(b) (an "injunction"); *id.* § 603(b)(1) (a "court order"). If anything, these examples reinforce Sirius XM's position that the provision of express rights of action in other sections of the Copyright Act shows that it did not intend to provide one in Section 114. *See* Sirius XM's Mot. for J. on the Pleadings, ECF No. 62 ("Mot.") at 17–20.

5.  SoundExchange relies heavily on the Second Circuit's decision in *Oxford University Bank v. Lansuppe Feeder, LLC*, 933 F.3d 99 (2d Cir. 2019), for the proposition that a remedy can be "presupposed" when "Congress includes express language in [a] statute that *contemplates enforcement*." Opp'n at 10 (emphasis added). That case is both distinguishable and on shaky precedential footing. As one of just a handful of cases in the last decade in which the Second Circuit has recognized an implied right of action, *Oxford* is an outlier. In finding an implied right of action in Section 47(b) of the Investment Company Act, the Second Circuit openly acknowledged it was splitting with the Third Circuit, and the holding in *Oxford* is now being challenged in a pending petition for certiorari before the Supreme Court.[3]

In any case, the statutory language in *Oxford* is materially different. The statute there says "*a court* may not deny rescission at the instance of any party," which the plaintiff argued meant "any party" could seek "rescission" in a "court"—all words in the statute.  933 F.3d at 104 (emphasis added). The Second Circuit agreed, finding the clause "effectively equivalent to

---

[3] *See* Pet. for Writ of Cert., *FS Credit Opps. Corp. v. Saba Cap. Master Fund, Ltd.*, No. 24-345, 2024 WL 4349951 (Sept. 24, 2024). The Supreme Court called for a response to the petition, which was filed on December 17, 2024. The petition will be considered at a conference of the Court in early 2025.

providing an express cause of action." *Id.* at 105. The word "rescission" also means a particular type of court-ordered "equitable remedy," *Beck Chevrolet Co. v. Gen. Motors LLC*, 787 F.3d 663, 680 (2d Cir. 2015), so a provision saying "a court" cannot deny "rescission" to "any party" is a much stronger textual case for believing Congress intended to allow suits seeking rescission.

Here, the textual cupboard is bare. There is no mention of a "court" in Section 114, or any statement about relief that "a court" cannot withhold from "a party." The statutory text important to the court in *Oxford* is entirely absent here. Because "a private right of action under federal law . . . must be 'unambiguously conferred,'" *Armstrong*, 575 U.S. at 332 (quoting *Gonzaga,* 536 U.S. at 283), *Oxford* simply does bear on (much less control) the outcome here.[4]

6.    Finally, SoundExchange argues that an "unbroken line of enforcement actions under Section 114 confirm[s] that Congress intended to provide a right of action." Opp'n at 14. Not so. Congressional intent is determined by the text and structure of a statute, not post-enactment judicial decisions. Neither Sirius XM nor this Court is bound by what other parties may or may not have argued in prior cases, nor does Sirius XM's decision to settle a prior case brought by SoundExchange preclude Sirius XM from now arguing that SoundExchange lacks a private right of action. SoundExchange offers no case law for such a sweeping proposition, because none exists.

Legal arguments evolve over time with changes in legal precedent and for various other reasons, and just because a party did not raise a legal argument in an earlier lawsuit does not forever bar it from making a new argument. That is why judicial estoppel only applies to contradictory *factual* positions, and not legal theories that were never pursued. *See, e.g.*, *Zurich Am. Ins. Co. v.*

---

[4] SoundExchange relies on another case, *N.Y. State Citizens' Coalition for Children v. Poole*, where a divided panel held that a "statute requiring states to make payments to foster parents was focused on the rights of the intended beneficiaries." Opp'n at 8, 10 (citing 922 F.3d 69, 81 (2d Cir. 2019)). That case is similarly questionable. Five judges on the Second Circuit dissented from denial of rehearing *en banc*, finding that the "right [the majority] identifie[d] [wa]s not even fairly discernible, much less unambiguously manifest." 935 F.3d 56, 58 (2d Cir. 2019). In any case, that decision, interpreting an entirely different statute, has no application here because, in the Copyright Act, Congress repeatedly provided express private rights of action where it intended to do so without doing so in Section 114.

*Felipe Grimberg Fine Art*, 324 F. App'x 117, 119 (2d Cir. 2009). And it similarly "arises only from a position taken in an *adjudicatory proceeding*," which a CRB proceeding is not, 18B Fed. Prac. & Proc. Juris. § 4477 (3d ed. 2024) (emphasis added). Sirius XM's comments "[i]n a proposal to the CRB in a rate proceeding," Opp'n at 14 (which were, incidentally, never adopted), have no bearing on the question of statutory interpretation now before the court.

The D.C. Circuit's decision in *SoundExchange, Inc. v. Muzak LLC*, 854 F.3d 713 (D.C. Cir. 2017) only underscores this point. The court *sua sponte* ordered supplemental briefing on the "source of [SoundExchange's] action," ECF No. 70-3 at 2, indicating it recognized the potential issue on its own. The court also called for the views of the CRB, *id.*, and the Board notably "*expresse[d] no view on the source of [] [SoundExchange's] cause of action*," ECF No. 70-7 at 9 n.1 (emphasis added)—a stunning rebuke to SoundExchange's position here that such a right is unmistakably clear and understood by all. The defendant in that case did not contest SoundExchange's right of action, and indeed had waived that argument by not raising it at the district court or in the D.C. Circuit. *See* Fed. R. Civ. P. 12(h)(2). Thus, the D.C. Circuit did not have occasion to rule on the issue, and did not do so *sub silentio*. Whether the D.C. Circuit would hold there is a private right of action in a case where that position is advocated is unsettled and–in all likelihood–the D.C. Circuit would reject an implied right, as it has elsewhere enforced the presumption against implied rights of action very strictly. *See, e.g.*, *Johnson v. Interstate Mgmt. Co*, 849 F.3d 1093, 1097 (D.C. Cir. 2017) (finding no cause of action under the Occupational Safety and Health Act).

*    *    *

The Brief of *Amici Curiae*, ECF No.72-1 ("*Amici* Br."), is no better at locating a textual source for SoundExchange's private right of action. Instead, *Amici* resort to snippets of regulatory

8

and legislative history that say nothing about SoundExchange's right to sue. *See Amici* Br. 6–7 (quoting *Determination of Reasonable Rates and Terms for the Digital Performance of Sound Recordings and Ephemeral Recordings*, 67 Fed. Reg. 45,240, 45,245 (July 8, 2002)); *see also id.* at 7–8 (quoting H.R. Rep. No. 115-651 (2018)). Even if these documents were a clue to Congressional intent, *Amici*'s inference from them amounts to sheer conjecture. *See, e.g., id.* at 7–8 (gleaning from the legislative history's mention of "widespread industry support [for SoundExchange]" that Congress intended to give SoundExchange a private right of action). "The Court may not replace the actual text with speculation as to Congress' intent.'" *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) (cleaned up).

Section 114's lack of "rights-creating" language or a remedy for SoundExchange thus "buttresse[s]" the "presumption" that there is no implied right of action. *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007).

## II.    Congress Allowed For Alternative Mechanisms of Enforcement

On the second factor, SoundExchange argues that "the Act creates no other mechanism" for enforcing "Section 114's 'binding' royalty obligation." Opp'n at 15. The premise of SoundExchange's argument is simply mistaken. Copyright owners have several remedies available to them for underpayment. In addition to the mechanisms outlined in the opening brief, Mot. at 15, it is black letter law that "[a] common law action may [also] exist to recover unpaid royalties," *Peer Int'l Corp. v. Pausa Recs., Inc.*, 909 F.2d 1332, 1339 n.9 (9th Cir. 1990) (citing 3 NIMMER ON COPYRIGHT § 10.15[A] (failure to pay royalties under license agreement gives rise to breach of contract or rescission action)); *see Graham v. James*, 144 F.3d 229, 235 (2d Cir. 1998) (affirming award of breach of contract damages for underpayment of royalties).[5] SoundExchange

---

[5] *See also, e.g., Durgom v. Janowiak*, 87 Cal. Rptr. 2d 619, 622 (Cal. Ct. App. 1999) (holding that state courts "have jurisdiction in contract actions for nonpayment of royalties arising out of the exploitation of copyrighted works"

studiously avoids mention of traditional state common law remedies for underpayment. *See* Opp'n at 20 n.21.

SoundExchange acknowledges that "where a common-law principle is well established[,] the courts may take it as given that Congress has legislated with an expectation that the principle will apply." *Id.* at 13. "The availability of [] alternative mechanisms to enforce" the statute "strongly suggests that Congress did not intend to imply a [] private right of action." *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 128 (2d Cir. 2020); *see also, e.g.*, *Diagnostic Affiliates of Ne. Hou, LLC v. Aetna, Inc.*, 654 F. Supp. 3d 595, 611 (S.D. Tex. 2023) (holding no implied right of action in the Coronavirus Aid, Relief, and Economic Security Act provision that could be enforced through state law claim of unjust enrichment). That is the case here.

## III.    Congress Withheld a Right of Action in Section 114

SoundExchange has no good answer for the third factor. Unable to deny that Congress has explicitly authorized private rights of action in other sections of the Copyright Act, *see* Mot. at 17–20, both SoundExchange and *Amici* attempt to divert the Court's attention by twisting the text and legislative history of Section 115, *see* Opp'n at 20; *Amici* Br. at 7. But the text is clear. Unlike Section 114, the text of Section 115 grants clear rights to sue in numerous places.

1.    As noted in Sirius XM's opening brief, *see* Mot. at 9, Section 115 provides a right of action for the Mechanical Licensing Collective (the "MLC") to collect unpaid administrative assessments from non-blanket licensees, *see* § 115(d)(6)(C). SoundExchange and *Amici* say this language is "inapposite" because it applies only to "one very specific type of enforcement," Opp'n at 20; *Amici* Br. at 7, but that misses the point entirely. Regardless of which "specific type of

---

(cleaned up)); *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 559 (9th Cir. 1990) (holding that a copyright owner that grants a nonexclusive license "retains the right to sue [] in state court on a variety of [] grounds, including breach of contract"); *U.S. Naval Inst. v. Charter Commc'ns*, 936 F.2d 692, 695 (2d Cir. 1991) ("[A]n exclusive licensee . . . is capable of breaching the contractual obligations imposed on it by the license.").

enforcement" is at issue in Section 115, the point is the same—that there *is one*. Congress's express provision of rights of action in other sections of the Act shows that it intentionally withheld a private right of action in Section 114. *See Olmsted*, 283 F.3d at 433.

The subsections of Section 115 dealing with the rights and authorities of the MLC are vastly more explicit than in Section 114. For example, Section 115(d)(3)(C)(i)(VIII) authorize the MLC to "***Engage in legal and other efforts to enforce rights and obligations under this subsection . . . .***" (emphasis added). And Section 115(d)(3)(G)(ii) refers expressly to a "legal action" when discussing the MLC's "[c]ollection and distribution of royalties." This affirmative language stands in stark contrast to the indirect reference to enforcement of rights in the subsection of Section 114 enumerating *the costs of "enforcement"* that SoundExchange may deduct from its receipts prior to distribution. *See* § 114(g)(3)(C) (emphasis added). And that cost-deduction phrase is the *only* reference to "enforcement" in the entirety of Section 114.

Both SoundExchange and *Amici* try to explain away the unfavorable comparison to Section 115 by focusing on the sequencing of the statutes. Opp'n at 21; *Amici* Br. at 7. SoundExchange maintains that Congress adopted "*all* the [] enforcement provisions in Section 115[] in 2018, sixteen years *after* Congress enacted the 'enforcement of rights' provision of Section 114." Opp'n at 21 (first emphasis added). That is not correct. Under the Copyright Act of 1976, copyright owners had an enforcement right under Section 115 that preceded the adoption of Section 114: a default termination right. Under Section 115, copyright owners could provide notice of default for anyone failing to pay royalties, and "unless . . . remedied within thirty days . . . the compulsory license w[ould] be automatically terminated." Copyright Act of 1976, Pub. L. No. 94-553, 90 Stat. 2561, 2562 (codified at 17 U.S.C. § 115(c)(4)). Accordingly, at the time Section 114 was enacted, Congress knew how to explicitly grant a mechanism to enforce lack of payment of a compulsory

license, and ***it chose not to do so in Section 114***.

Indeed, in the February 2015 Report of the Register of Copyrights cited by *Amici*, *see* Br. at 8 (citing U.S. Copyright Off., *Copyright and the Music Marketplace* (Feb. 2015)) (the "2015 Report"), the Office observed that "[u]nlike section 115, sections 112 and 114 *do not include* a right to terminate a licensee that fails to account for and pay royalties," 2015 Report at 7 (emphasis added). Because, in its view, that difference "severely undermines the ability of SoundExchange to police noncompliant licenses," the Office concluded that "the section 112 and 114 statutory licenses should be *amended* to include a termination provision akin to that in Section 115," *id.* at 181 (emphasis added). Of course, that amendment never happened.

Similarly, one of the *Amici*—the American Association of Independent Music—submitted a response to the Copyright Office's Notice of Inquiry for the 2015 Report, raising a "concern[]" about the need for SoundExchange to be "grant[ed] explicit enforcement rights," "including specific remedies up to and including termination of a license for services that repeatedly fail to act in compliance with license terms." Ex. B at 8. Again, Congress never adopted such an amendment. Thus, even if these pieces of legislative history were relevant to the statutory interpretation question, they support Sirius XM's position that SoundExchange was not granted express enforcement rights. The Copyright Office and industry members recognized the absence of explicit rights at the time and petitioned for change, but did not secure them from Congress. But now SoundExchange wants this Court to do what Congress would not.

2.   SoundExchange also points to statutes outside the Copyright Act to argue that Congress knows how to expressly deny a right of action but chose not to do so in Section 114. Opp'n at 23. That reasoning is backward and would turn the *Sandoval* doctrine on its head. Under that logic, there would be a presumption in favor of an implied right of action unless Congress expressly

*prohibited* such an implied right. That is not how the *Sandoval* inquiry works. *See Bellikoff*, 481 F.3d at 117 ("[There is a] strong presumption against creating private rights of action.").

3.      Finally, SoundExchange completely ignores the express right of action Congress provided for copyright owners in 17 U.S.C. §§ 501–510 before the compulsory license in Section 114 even existed. SoundExchange distinguishes *Xerox Corp. v. Apple Computer, Inc.*, 734 F. Supp. 1542 (N.D. Cal. 1990), on the basis that it involved a different cause of action that preceded Section 114. Opp'n at 18–19. Regardless of the cause of action, the *Xerox* court's reasoning is directly applicable here: Congress provided an express right of action elsewhere in the Act; Congress withheld an express cause of action in Section 114; and "remedies not provided are remedies not intended." *Xerox*, 734 F. Supp. at 1549.

SoundExchange is left with a decades-old Ninth Circuit decision that is not binding on this Court and is of dubious reliability under recent Supreme Court precedent. *Compare Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1122 (9th Cir. 2015) (relying on a regulation to find a provision could "be enforced by private action"); *with Sandoval*, 532 U.S. at 291 ("Language in a regulation may [only] invoke a private right of action that Congress through statutory text created.").

## IV.    Achieving a Better Policy Outcome is a Task for Congress, Not This Court

The music licensing system will not grind to a halt if this court finds SoundExchange lacks a private right of action. The benefits of the statute lauded by *Amici* will endure. *See*, *Amici* Br. at 6–11. SoundExchange will still continue to collect and distribute royalties and, undistracted by its misguided and unauthorized litigation, it will have more time to fulfill its core purpose of identifying artists who are entitled to royalties.[6]

---

[6] SoundExchange has received criticism for its failure to properly distribute the more than $1 billion in royalties it collects each year, including for not paying artists what they are owed. *See* Ex. C, Ari Herstand Letter in Response to

*Amici* invokes the "absurd results" doctrine to advance its social policy arguments, *id.* at 8, but that doctrine imposes a high bar that is not remotely satisfied here. An interpretation is absurd only if the result would be "so gross as to shock the general moral or common sense." *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930). "The absurdity canon isn't a license for [the Court] to disregard statutory text where it conflicts with [its] policy preferences; instead, it is confined to situations where it is quite impossible that Congress could have intended the result . . . and where the alleged absurdity is so clear as to be obvious to most anyone." *In re Hokulani Square, Inc.*, 776 F.3d 1083, 1088 (9th Cir. 2015) (cleaned up); *see* Antonin Scalia & Bryan A. Garner, *Reading Law*, 234 (2012). The only "absurdity" is *Amici*'s suggestion that, without an implied right of action in Section 114, Sirius XM will have "incentive to significantly underpay royalties." *Amici* Br. at 12. Sirius XM's business is reliant in substantial part on critical relationships with artists and copyright owners, all of whom could assert lawsuits arising under the common law to enforce underpayment. Sirius XM does not have a free pass to underpay artists, and it does not do so.

Far from "impossible" to conceive, there are plenty of reasons that Congress intended to withhold a private right of action in Section 114, most notably that copyright owners have other state-law mechanisms for enforcing their rights. In addition, giving a collective like SoundExchange a private right can distort the incentives to bring lawsuits like these, essentially granting SoundExchange free rein to bring meritless lawsuits (and deduct the costs from royalty payments made to artists). Congress understood this dynamic in limiting Section 114. Ample reasons exist to withhold a private right to sue, and if the Court can think of "even one sound

---

the Notice of Inquiry for the 2015 Report, titled "SoundExchange Is Screwing Me Out Of Money And There's Nothing I Can Do About It"; *see also* Complaint at 9, *Marie v. SoundExchange*, 16-cv-02329 (N.D. Tex. Aug. 11, 2016) (putative class action lawsuit by non-union musicians and vocalists against SoundExchange for "fail[ure] to take steps and implement procedures to ensure that the funds to which they are entrusted are paid regardless of union status").

reason to think Congress might doubt the . . . necessity of" an implied remedy, it "must not create a private right of action." *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 637 (2021) (cleaned up).

Moreover, even assuming *arguendo* that a gap in the statute exists, any grievance SoundExchange and *Amici* have over SoundExchange's inability to sue should be taken up with Congress, not this Court. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13–14 (2000) ("Achieving a better policy outcome . . . is a task for Congress, not the courts."). "Congress frequently revisits this statutory scheme and can readily correct [a] mistake[]" if the Court "misread[s] its meaning." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 672 (1989) (Stevens, J., dissenting). The Court's task is to "apply the text, not to improve upon it," *Pavelic & LeFlore v. Marvel Enter. Grp.*, 493 U.S. 120, 126 (1989). The Supreme Court has emphasized this rule repeatedly. *See, e.g.*, *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 661 (2007) (Ginsburg, J., dissenting) (noting that the "ball is in Congress's court . . . to correct th[e] Court's parsimonious reading of Title VII"); *King v. Burwell*, 576 U.S. 473, 515 (2015) (Scalia, J., dissenting) ("[The Court] lack[s] the prerogative to repair laws that do not work out in practice.").

## CONCLUSION

Congress did not "absentmindedly forg[e]t to mention an intended private action" in Section 114 when it explicitly provided private rights of action under other sections of the Copyright Act. *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979) (cleaned up). Congress plainly knew how to do so, but did not. The policy arguments raised by SoundExchange should be addressed to Congress, not this Court. Because SoundExchange has failed to overcome the presumption against implying a right of action, and because doing so risks violating core separation-of-powers principles fundamental to the Constitution's design, this Court should dismiss SoundExchange's lawsuit with prejudice.

15

Dated: December 20, 2024

Respectfully submitted,

By:  /s/ Todd Larson

Todd Larson
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8238
Facsimile: (212) 310-8007
Todd.Larson@weil.com

Andrew S. Tulumello (admitted *pro hac vice*)
Crystal L. Weeks (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7100
Facsimile: (202) 857-0940
Drew.Tulumello@weil.com
Crystal.Weeks@weil.com

*Counsel for Defendant Sirius XM Radio LLC*